REID, Judge.
This is a suit for damages resulting from the defendant United Pipe Line Company’s operations on and beyond a 50 foot servitude granted to the defendant by judgment of the 17th Judicial District Court in an expropriation suit. The servitude was granted for the purpose of constructing and laying a 30 inch pipe line a distance of 1050 feet across the property of Ernest Stoufflet Jr., plaintiff herein. The judgment in the said expropriation suit provided the defendant herein (plaintiff in that suit) “shall pay unto defendant the actual damages that may be sustained by defendant for any crops, timber, or other tangible property by virtue of the construction and operation of said pipe line.”
Plaintiff alleges that the work done by the defendant stopped up the main drainage canal, causing damages and preventing the growth and harvesting for two years of White Dutch Clover, Dallas Grass and Bermuda Grass grown for hay for cattle; defendant tore up property with heavy equipment, leaving it with holes, ruts and ditches, making it difficult to operate mechanical equipment for the cultivating, seeding, planting and harvesting of crops; defendant damaged a bridge, caused the loss of a cow with calf, and a valuable colt, and destroyed a valuable shade tree and 12 green oaks and other trees. Plaintiff prayed for damages in the amount of $13,-150.00.
Defendant filed a general denial and a plea of one year prescription for damage to crops under the provisions of LSA-R.S. 9:5601. The defendant filed two supplemental answers, the first alleging that it obtained through its judgment of expropriation the right of ingress and egress and the second setting forth a specific defense that any crop loss and failure in 1959 was caused as a result of excessive rainfall that year, particularly during the harvesting period.
On these issues the case was tried and submitted, and the Trial Judge, for writ *830 ten reasons assigned, rendered a judgment on August 9, 1963 against defendant in the sum of $6,505.00, with legal interest thereon from date of judicial demand until paid. It appears that the exception of prescription was referred to the merits, as it was passed on by the Trial Judge in his written reasons. From that judgment the defendant has perfected this appeal. The plaintiff did not file an answer to the appeal. Defendant filed an exception of prescription in this Court based upon LSA-C.C. Art. 3536, and re-urged his plea of prescription based upon LSA-R.S. 9:5601.
In connection with its plea of prescription the defendant argues that the cause of action under which the plaintiff claims damages began on June 22, 1959, when the ■contractors entered upon the property for the cleaning and clearing of the right-of-way, and continued through the period of the digging of the trench on or about July 20, 1959, and through the period of the laying of the pipe line into the trench on or about August 12, 1959, and continued through the period of the back fill on September 8, 1959, when the cause of action ceased. The defendant maintains September 8, 1959 was the last date any specific item of damages was inflicted or any loss of crop or profit sustained, and that as plaintiff did not file his suit until December 12, 1960, his claim of action prescribed by the prescription of one year under LSA-R.S. 9:5601 and LSA-C.C. Art. 3536.
The Trial Court found in addition to the foregoing chronology that on November 29, 1959 the defendant went onto plaintiff’s property to pick up boards, brush and trash, and on February 12, 1960 returned to install a culvert to replace a bridge, and the actual cleanup was completed March 22, 1960. The Trial Court held that as plaintiff’s suit was filed December 12, 1960, 9 months after final cleanup on March 22, 1960, there was no merit to defendant’s plea of prescription. The Trial Court was correct in its holding that the acts of which the plaintiff complains were still in existence as of March 22, 1960 for LSA-R.S. 19:2.1, subd. B reads as follows:
“B. All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation.”
As plaintiff’s suit was filed within two years from the date on which the property was actually occupied and used for the purpose of the expropriation, plaintiff’s suit was timely filed.
The Trial Judge awarded the plaintiff damages in the amount of $5,000.00 for the loss of his hay crops,'$230.00 for the loss of a cow with calf, $250.00 for loss of a colt, $500.00 for loss of a live oak tree, $75.00 for damages to another tree, $200.00 for the cost of releveling the property and restoring it to its original condition, and $200.00 for placing the property in a state of cultivation, including replowing, reseeding and rolling, and $50.00 for loss of timber cut from the right-of-way, making a total award of $6,505.00.
It should be pointed out that all of the crop damage occurred on a 20 acre portion of plaintiff’s 40 acre tract across which the pipe line was laid, which 20 acre tract was used by plaintiff for grazing cattle and growing hay.
The defendant sets forth the following specifications of error in connection with the trial on the merits:
1. The Court erred in finding that “on November 29, 1959 they were in there picking up boards and brush and trash” and in construing these incidental acts of special improvements rather than of damages as continuous and progressive acts of damages.
2. In finding that “on February 12, 1960 they went in there to install *831 a culvert to replace a bridge and also back in there on February 16” and construing these incidental acts as continuous and progressive acts of damages.
3. In finding “as to back-fill on September 8, 1959” a witness testified that “actually when we back-fill we call that roughing-in and the cleaning up was actually completed March 22, 1960,” and construing these incidental acts as continuous and progressive acts of damages.
The Trial Judge found that substantial damage had been done to plaintiff’s property and crops and stated:
“The testimony shows that the greatest damages sustained by the plaintiff as a result of the installation of the defendant’s pipe line was on a 20 acre tract, across which the pipe line was layed, on which he grew three kinds of hay for his cattle: White Dutch Clover usually harvested in May or June, Dallas Grass usually harvested from 75 to 90 days after clover harvesting, and Bermuda Grass generally harvested in October. (It is noted that October is recommended for clover planting and March for Dallas and Bermuda.)
“The testimony indicates that the plaintiff’s lands were in excellent condition and well maintained. Royal Pel-legrin, a witness who was engaged in the cattle business and in hay farming, testified that the plaintiff had one of the best drained pastures in Terrebonne Parish, that he had done a great deal of work in V ditching, a type of ditching that not only provides excellent drainage but also facilitates the use of mechanical equipment in harvesting operations. The witness emphasized the excellence of the plaintiff’s drainage with the statement that he has ‘more V ditching on his 40 acres than I got on my 240 acre range on Little Caillou’.
“The testimony established'with certainty that drainage is á very important factor in the production of hay crops, that drainage of the plaintiff’s property was not only impaired but disrupted, that ruts and holes and ridges were left on the property, that both water and the uneven condition in which the land was left made impossible the use of mechanical equipment in harvesting operations, that excessive water and dampness is destructive of hay crops, and that water and dampness made impossible the harvesting of the 1959' crops and the planting of 1960 crops.”
The testimony and exhibits substantiate the Trial Judge’s finding of facts in this regard. The numerous witnesses for the plaintiff testified as to the condition of his field at the time when the 1959 crop should have been harvested and as to its condition at the time when the 1960 crop should have been planted. Mr. Royal J. Pellegrin testified when he inspected the property for the purpose of determining whether or not it would be possible to harvest the 1959' clover crop he found nearly 12 inches of water on the front pasture, and the main draining ditch was blocked keeping the water in the front pasture, and that although the plaintiff had a “wonderful crop' of clover grass” it was impossible to take it off because his equipment would have-bogged down. This testimony was substantiated by Mr. Lyles Bourg, who testified he went on the property during the month of June 1959, found the contractor working-off the 50 foot right-of-way, and found the ditch dammed and the fields full of water up to 7 or 8 inches. Mr. Silas Martin, Deputy Sheriff, visited the plaintiff’s property-on July 18, 1959, after a complaint was-filed in the sheriff’s office. The complaint shows plaintiff wanted a deputy to see his-pasture because it was “flooded with water. United Gas Pipe Line Co. stopped up his-drainage ditch and the water can’t come-out.” The plaintiff also introduced numerous pictures clearly showing the condition of his property.
*832 The defendant failed to counteract the testimony of plaintiff and his witnesses, and based its defense solely upon the fact that the rainfall was unusually heavy during the summer of 1959, and contended this unusually heavy rainfall in the area caused the actual damage suffered by the plaintiff. It is true that the rainfall was heavier than prior years, but the defendant was unable to prove the plaintiff would have suffered crop loss as the result of the heavy rain if defendant had not caused the damage which the Trial Court found it had caused.
In awarding plaintiff $5,000.00 for total crop loss the Trial Judge stated that the testimony was overwhelming that the plaintiff sustained the loss of the following crops:
“(1) For the year 1960, 20 acres of White Dutch Clover averaging 50 bales per acre at $1.00 per bale-$1000.00
“(2) For the year 1959, 20 acres of Dallas Grass averaging 100 bales per acre at 50$ per bale-$1000.00
“For the year 1960 the same loss-$1000.00
“(3) For the year 1959, 20 acres of Bermuda Grass averaging 100 bales per acre at 50$ per bale-$1000.00
“For the year 1960, the same loss-$1000.00.”
While it is true that the plaintiff and several of his witnesses testified as to the yield per acre and the price per bale, in accordance with the figures arrived at by the Trial Judge, and while the opinion of the Trial Judge on a question of fact such as here presented should be given great weight, in arriving at his figures, the Trial Judge completely ignored the testimony of Mr. Richard Sonnier, the County Agent for the Parish of Terrebonne since 1945, who was called as a witness by the plaintiff, although he was subpoenaed by both sides.
Mr. Sonnier’s testimony as to both the value and the yield is at variance with the findings made by the Trial Judge and with the testimony of plaintiff and his witnesses. Mr. Sonnier testified his figures were based upon the average for the entire Parish and on information received from the farmers and on statistics he had in his possession. Mr. Sonnier testified that on an average a farmer would get 40 bales of White Dutch Clover to an acre, although he did state that this was ordinarily without fertilization, and if the land were properly fertilized, as plaintiff contended his land was, then the average would run to 50 bales. This would put his figure in regard to the yield for Dutch Clover in line with that found by the Trial Judge. Mr. Sonnier set the price for Dutch Clover at 85$ per bale, but admitted that $1.00 per bale was not unreasonable nor excessive. As to Dallas Grass and Bermuda Grass, the testimony of Mr. Son-nier varied greatly with that of the other witnesses. While plaintiff and his witnesses contended that the price for the Dallas Grass and Bermuda Grass amounted to $1.00 per bale per acre for each cutting, Mr. Sonnier was most emphatic in his testimony that the two cuttings together would amount to 50$ per bale per acre, that this is what the farmers in the Parish told him and what the statewide statistics showed, and that with good fertilizing one could expect approximately a 30% increase. Thus, assuming that plaintiff fertilized as he contended, this would make a yield of 65 bales per acre for the Dallas Grass and Bermuda Grass, rather than 200 bales per acre as found by the Trial Judge. In addition, Mr. Sonnier *833 testified that the value of the Dallas Grass and Bermuda Grass was 60f! per bale, rather than 50{i as found by the Trial Judge. The Trial Judge made no allowance for the cost of reseeding, planting, harvesting, fertilizing, baling and hauling the hay. Mr. Sonnier testified the average cost per bale of hay in Terrebonne Parish was between 30(f and 40^, and based upon his figures 40 bales of White Dutch Clover at 85^ per bale and 50 bales of Dallas and Bermuda Grasses at 60$S per bale the gross receipts would be $64.00 and the cost $31.50 (35{S per bale) leaving a net of $32.50 per acre per year. Included in Mr. Sonnier’s cost figure were seeding, mowing, fertilizer, hauling and baling. Plaintiff argued the greatest item of cost is that of labor, which, in this case, was negligible because the labor was performed by himself and his neighbors, all of whom helped each other gather hay, and that this cost figure is not relevant and should be ignored. However, it is difficult to see how a cost factor, including labor, can be ignored. It appears to this Court that the same rule should apply in this case, wherein the plaintiff in seeking to recover the value of his hay which was to he fed to his cattle in the winter, as that used in other cases dealing with loss of cash crops by farmers. See Rhymes v. Guidry, La.App., 84 So.2d 637, wherein the Court held:
“Despite defendants’ argument that damages for loss of crops is limited to the cost of seed and labor expended at date of injury and cannot be the speculative profits which would have been received when the crops were matured and gathered. Boudreaux v. Thibodeaux, 149 La. 400, 89 So. 250, we believe the District Court correctly applied the more modern rule that in determining damages to growing crops ‘the proper criterion to be used in arriving at the approximate loss suffered by the plaintiffs would be the average yield and market value of crops of the same kind of (crops) rice planted and cared for in the same manner in the same community, Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So.2d 107, at page 108, ‘less the cost of marketing, harvesting, and maturing’, the market value being ‘what the crops would have brought in a matured state at a sale in that community’, Watkins v. Gulf Refining Co., 206 La. 942, 20 So.2d 273, at page 281.”
In the present case the cost of seeding and fertilizing should be deducted as the plaintiff testified that he planted no seed in 1959 or 1960 for the crop in question nor is there any evidence that he spent any money for fertilizer in these years.
In a situation where the Court is trying to assess the value of a potential crop rather than an existing crop, certainly the testimony of an expert as to yield and cost throughout the Parish should be given great weight.
Mr. Sonnier, the County Agent, testified as follows:
“Q: How many crops of hay would you get off of a hay field during the year?
“A: We are working with ideal conditions. We wish for ideal conditions. Three crops of hay is a good harvest.
“Q: Would that be the average?
“A: I don’t have any records, but I would say in this parish we don’t get that every year, no. Hay is a risky crop. I think everybody will admit that, due to rainfall and heavy dew and high humidity.”
The values and method of computation used by Mr. Sonnier fit the test set forth in the Rhymes case, supra.
*834 Applying the gross yield and price figures of Mr. Sonnier to tire facts herein, we compute the award to be given to the plaintiff as follows:
For 1960 White Dutch Clover Crop:
SO bales of White Dutch Clover per acre $1.00* equals: $50.00
Cost per bale of 35¡á equals 17.50
Leaving a net per acre of $32.50
$32.50 per acre for 20 acres equals $650.00
For 1959 Dallas and Bermuda Grasses: 65 bales at 600 per bale equals $39.00
Cost per bale of 350 equals 22.75
Leaving a net per acre of $16.25 per acre for 20 acres equals $16.25 $325.00
For 1960 Dallas and Bermuda Grasses: $325.00
Same figure as above for 1959 $1300.00
The Trial Judge awarded plaintiff $500.-00 for the loss of a live oak tree located on the right-of-way which was cut by the defendant. Plaintiff introduced evidence to show the importance of this tree for providing shade and shelter for his cattle, and also introduced evidence showing that the cost of building a 50 foot shed to provide the same shade and shelter as had been provided by the tree could be $500.00. We do not feel that the award of the Trial Judge is excessive and the same should be maintained.
The Trial Judge’s award of $75.00 for the partial damage to trees is also correct.
The Trial Judge awarded plaintiff $230.-00 for the loss of a cow with calf. This value was based on an average as set by Mr. Pellegrin, an experienced cattleman, and is adequate.
The Trial Judge awarded plaintiff $250.-00 for the loss of a colt. The record discloses that plaintiff was unable to furnish any evidence whatsoever which would establish that the colt was injured by any act of negligence on the part of the defendant, therefore, lowed. this award is disal-
The evidence sustains the Trial Judge’s award of $200.00 for restoring the property to its original condition and $200.00 for the cost of recultivating, and the award of $50.00 for the value of timber destroyed.
Accordingly, it is hereby ordered, adjudged and decreed the judgment of the Trial Court awarding plaintiff the sum of $6505.00, with legal interest thereon from date of judicial demand until paid, be and the same is hereby amended and revised and judgment rendered herein in favor of plaintiff as follows: $1300.00 for loss of crops; $500.00 for the loss of the live oak tree; $75.00 for partial damage to trees; $50.00 for the value of timber destroyed; $230.00 for the loss of a cow with calf; $200.00 for restoring the property to its original condition; and $200.00 for the cost of recultivating; or a total of $2555.-00, together with legal interest from date of judicial demand until paid and all costs of these proceedings.
Amended and rendered.

 Because of Mr. Sonnier’s testimony that fertilization could increase the yield of White Dutch Clover from 40 bales an acre to 50 bales an acre and that $1.00 per hale was not unreasonable, those figures were used in our calculation.