Percy FONTENOT

v.

**TEXACO INC.**

Civ. A. No. 11085.

United States District Court
W. D. Louisiana,
Opelousas Division.

Aug. 11, 1967.

Donald Soileau, Mamou, La., for plaintiff.

Bailey & Mouton, Charles F. Bailey, Lafayette, La., and Wiley G. Lastrapes, Daniel P. Hurley, and Clarence A. Frost, New Orleans, La., for defendant.

PUTNAM, District Judge.

### MEMORANDUM OPINION

This suit, a slander of title action filed in State Court and removed here, seeks cancellation of a mineral servitude of Texaco Inc. insofar as it affects the lands of Plaintiff.

The servitude in question was created on May 13, 1924 when The Texas Company (of Texas), ancestor in title of Texaco Inc., sold to E. B. Norman and Company a large area of land, in one continuous body, reserving the subsoil or subjacent land, and the mineral content thereof, below the depth of 500 feet from the surface of the earth.

After answering, Defendant filed a motion for summary judgment based on the allegations of the complaint, the admissions of Plaintiff in response to interrogatories served under Rule 33, and certain affidavits, with annexed documents, filed in support of the motion.

The facts of the case, as hereinafter related, are undisputed. Although the motion for summary judgment was pending for almost five months, Plaintiff did not oppose the same with affidavits or other material, nor did· he file a brief in support of his position. Thus, under Rule 56(e), there is no genuine issue of fact remaining for trial.

It is expressly admitted by Plaintiff that his contentions in this case are limited to the following:

1. The subsoil reservation in the deed of 1924 is null and void as an attempt to divide the fee ownership of the land horizontally and thereby create a tenure of property unknown to Louisiana law.

2. If a mineral servitude was created by the reservation, the same was divided as to Plaintiff's land by a "telegraph road" and was lost with respect to said property by nonusage.

3. Alternatively, the servitude was divided by incorporating a portion thereof in the Ville Platte Field Unit, and was lost by nondevelopment of the nonunitized portion which includes Plaintiff's property.

1. *The Validity of the Subsoil Reservation*

This contention is entirely without merit, and requires only passing comment.

 It has been firmly established by both State and Federal decisions that a sale or reservation of the subsoil, with its mineral content, does not divide the fee ownership of the land horizontally, but establishes only a mineral servitude. Clement v. Dunn, 168 La. 394, 122 So. ,122; Iberville Land Company v. Texas Company, 14 La.App. 221, 128 So. 304; Goldsmith v. McCoy et al, 190 La. 320, 182 So. 519; Wier et al v. Texas Com-

pany, 5 Cir., 180 F.2d 465. The *Weir* case, decided by this Court, and affirmed on appeal, upheld, as a vaild mineral servitude, the identical subsoil reservation here involved.

## 2. *Division of the Texaco Servitude by The "Telegraph Road"*

Although the complaint alleges that the servitude was divided by public roads, Plaintiff admits that the only road involved is a certain "telegraph road" which is so designated on the official township plat and appears as a broken line thereon. Plaintiff further admits that this road was not created by written instrument, but was established by usage only.

Under the express provisions of the Louisiana Civil Code, as well as by the established jurisprudence of the State, a road established by public usage, or even by appropriation and maintenance by public authority, does not carry with it the fee ownership of the property, but creates, at best, only a right of passage or servitude over the land. Louisiana Civil Code Articles 658, 765; Fuselier v. Police Jury of Parish of Iberia, 109 La. 551, 33 So. 597; Paret v. Louisiana Highway Commission, 178 La. 454, 151 So. 768; Goree v. Mid-States Oil Corporation, 205 La. 988, 18 So.2d 591; Spier v. Barnhill, La.App., 168 So.2d 479.

It is hornbook law that a mineral servitude is not divided by a public road which is merely an easement of servitude over the property. Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Hunter Co. v. Ulrich, 200 La. 536, 546, 8 So.2d 531; Spier v. Barnhill, supra. Consequently, unless divided by other means, operations on any part of the Texaco servitude would constitute usage of such servitude as a whole.

## 3. *Division of the Servitude by Inclusion of a portion thereof in the Ville Platte Field Unit*

The Texaco servitude although established on May 13, 1924 was renewed by an agreement of February 11, 1929 between the landowner and the mineral owner. The renewal agreement acknowledged the mineral rights of Defendant and expressly provided that its purpose was to interrupt the prescription that may have accrued and was then accruing. Under the established jurisprudence of Louisiana, the life of the mineral servitude commenced anew from the date of the renewal agreement. Goldsmith v. McCoy, supra; Achee v. Caillouet, 197 La. 313, 1 So.2d 530; James v. Noble, 214 La. 196, 36 So.2d 722. In Weir v. Texas Company, supra, the identical renewal agreement here involved was so construed and given effect by this Court, and such action affirmed on appeal.

The record shows that commencing within the renewal period of the Texaco servitude and extending to mid-1963, over 30 wells were drilled, all with actual locations on the servitude itself. This being so, it makes no legal difference whether the wells involved were unit wells or not. In the recent case of Trunkline Gas Company et al v. Steen et al, 249 La. 520, 187 So.2d 720 (decided June 6, 1966), the Supreme Court of Louisiana squarely held that drilling on a servitude within a unit constitutes usage of the servitude within and without the unit and maintains the same in force and effect as an entirety.

Even if it be assumed, however, that unit operations on the Ville Platte Field Unit did not maintain the servitude in force with respect to acreage outside of said unit, there is no factual basis for Plaintiff's contention on this branch of the case.

Defendant submitted in support of its motion affidavits showing the complete history of drilling operations and production on the Texaco servitude, including the commencement dates, completion dates, and locations of all wells. Included is an affidavit by Frank Fava, Manager of the Lafayette District of the Louisiana Department of Conservation, to which is annexed certified copies of the Department records for the entire

period beginning in 1938 and ending in mid-1963.

The record establishes that the Ville Platte Field Unit did not become effective until September 1, 1951. It is also undisputed that beginning in the latter part of 1938 and ending in 1945, ten wells were drilled on the Texaco servitude, all of which were completed as producers and most of which continued to produce beyond the effective date of the unit. The wells still producing were adopted as unit wells when the unit became effective in 1951, but, even if it be assumed that they did not thereafter constitute usage of the nonunitized acreage, it is undeniable that, as nonunit wells, they constituted full usage of the servitude and prevented the accrual of prescription thereon until the unit was formed. This being so, Defendant had ten years after the unit effective date, or until September 1, 1961, within which to exercise its servitude on the acreage outside of the unit, if, in fact, such usage was legally required. And the record shows that such additional development was timely undertaken. On August 30, 1960 Defendant commenced its Well No. 11(11–D) and dually completed the same on October 7, 1960. On August 17, 1961, Continental Oil Company, under a farm-out emanating from Texaco Inc., commenced its Well No. 1, also outside the Ville Platte Field Unit, and in due course completed said well as a producer. Thereafter five more nonunit wells were drilled on the Texaco servitude by or on behalf of Texaco Inc.

Additionally, and in order to complete the picture, it is shown that the Operator of the Ville Platte Field Unit drilled and completed on the Texaco servitude fourteen unit wells during the period from November 25, 1951 to March 1962, and that most of these wells have continued to produce.

■ Considering both the unit and nonunit drilling and production as established by the record, there remains no doubt whatever that the Texaco servitude has been maintained in full force and effect as an entirety regardless of the existence of the Ville Platte Field Unit.

## SUMMARY JUDGMENT

The Motion of Defendant, Texaco Inc., for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure having been presented, and the Court being fully advised—

The Court finds that there is no genuine issue as to any material fact, and that Defendant is entitled to judgment as a matter of law.

It is, therefore, ordered, adjudged and decreed that the Defendant's motion for summary judgment be and the same is hereby granted, that Plaintiff have and recover nothing by his suit, and that said suit be and the same is hereby dismissed at Plaintiff's costs.