HAMLIN, Justice.
Certiorari limited to the issue of whether defendant is entitled to recover for crop destruction and damage was directed to the Court of Appeal, First Circuit. Art. *169 VII, Sec. 11, La.Const. of 1921; 205 So.2d 724, La.App. 208 So.2d 326.
The record discloses that Humble Pipe Line Company, a common carrier pipe line company (LSA-R.S. 45:251), filed this expropriation suit under the general expropriation laws of Louisiana (LSA-R.S. 19:1 et seq.) to obtain second-line rights (8.01 acres) across defendant’s lands.[1]
The trial court found that plaintiff was entitled to the right to lay, construct, maintain and operate an additional trunk line sixteen inches in diameter within its own right of way.[2] It concluded that the highest and best use of defendant’s land was for industrial purposes. It awarded defendant judgment in the sum of $13,649.04 ($5,206.50, the value of the right; $8,010.00, sugar cane crop damage; $432.54, loss of income from sugar refinery), plus court costs including $3,600.00 as fees for defendant’s expert witnesses.[3]
*171 The Court of Appeal amended and affirmed the judgment of the trial court. It reduced the award for compensation and rejected all claims for damages, stating:
“In considering prospective loss, no allowance can be made for damages arising from a use of the condemned property apart from its determined highest and best use. In order for the landowner to recover damages arising from the expropriation of property, the damages must be direct and certain and related to and arising out of and resulting from a deprivation of rights connected with the determined highest and best use of the condemned property for which compensation was awarded. Consequently, defendant’s claim for damages to its land, and the expenses for restoration of the land to agricultural use, and for replanting of sugar cane crop and loss of located on the property, all arising from sugar cane tonnage to the sugar mill the expropriation of the right of way, the highest and best use of which was determined to be industrial, must be disallowed.”
Our review is limited to a determination of whether a landowner whose land .is. expropriated for a right of way by a pipe line company is entitled to crop damage-where a finding is made that the best use-■of the land is for industrial purposes although it is planted in sugar cane at the-time of such finding. We conclude that the Court of Appeal erred in disallowing damages, and that defendant is entitled to sugar cane crop damage under the facts of this case.[4]
Counsel for Humble Pipe Line Company contend that the question of whether damages for the destruction of crops should be allowed, separate and apart from the-value of the land taken, must be decided negatively in this case because the highest and best use of the land was found to be for industrial purposes, and that the full and complete value of the land for this purpose was allowed the landowner.[5] They argue that in Louisiana standing crops are immovable and are considered as part of the land to which they are attached. They rely on Article 465 of West’s LSA-C.C.,. which provides, “Standing crops and the *173 fruits of trees not gathered, and trees before they are cut down, are likewise immovable, and are considered as part of the land to which they are attached.” Counsel further argue that the value placed on the instant property included the value of the ■crops growing on the surface of the land.
We are cognizant of the fact that xxnder certain circumstances, such as those ■contemplated by Article 465, supra, crops are immovables. In the case of sale, xxnless reserved or excepted by contract or operation of law, crops attached to the land at the time of the sale generally pass to the purchaser of the land. 25 C.J.S. Crops § 6, p. 10. See, 21 Am.Jur.2d, Crops, Sec. 11, p. 589; Baird v. Brown, 28 La.Ann. 842; Bludworth and another v. Hunter and others, 9 Rob. 256. Crops, however, are property whether they be immovable when attached to the land or movable when severed. Such designation has been a part of our law since 1874. Crops can be the subject of pledge, pawn, or privilege; .they have significant value.[6] It follows, therefore, that when crops are damaged or destroyed, their owners are subjected to loss.
Herein, plaintiff did not buy or pray for ownership of defendant’s land. There was no sale (West’s LSA-C.C. Art. 2439) or transfer of ownership (West’s LSA-C.C. Art. 488) ; Cf. 27 Am.Jur. Eminent Domain, Sec. 279, pp. 68-69. “The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it.” West’s LSA-C.C. Art. 658. The Court of Appeal remarked, “ * * * it is clear to us that there is a residual valxxe left in the property.” Therefore, defendant’s ownership became imperfect (West’s LSA-C.C. Art. *175 490), and plaintiff acquired a right of way — a servitude imposed by law (West’s LSA-C.C. Art. 664 et seq.); Cf. Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425.
A servitude has been designated in our Civil Code as a “charge” laid on an estate (West’s LSA-C.C. Art. 647) and an “accessory” to an estate (West’s LSA-C.C. Art. 652) ; it is provided in West’s LSA-C.C. Art. 655 that, “One of the characteristics of a servitude is, that it does not oblige the owner of the estate subject to it to do anything, but to abstain from doing a particular thing, or to permit a certain thing to be done on his estate.” Article 665 of West’s LSA-C.C., relating to servitudes imposed for the public utility, further provides that “All that relates to this kind of servitude is determined by laws or particular regulations.”
“Under the express provisions of the Louisiana Civil Code, as well as by the established jurisprudence of the State, a road established by public usage, or even by appropriation and maintenance by public authority, does not carry with it the fee ownership of the property, but creates, at best, only a right of passage or servitude over the land. Civil Code Articles 658, 765; Fuselier v. Police Jury of Parish of Iberia, 109 La. 551, 33 So. 597; Paret v. Louisiana Highway Commission, 178 La. 454, 151 So. 768; Goree v. Mid-States Oil Corporation, 205 La. 988, 18 So.2d 591; Spier v. Barnhill, La.App., 168 So.2d 479.” Fontenot v. Texaco, Inc., D.C., 271 F.Supp. 753.
“ * * * If an easement is given then no estate at all passes but only a right of user. * * * ” Consolidated School District No. 102, Washington County v. Walter, 243 Minn. 159, 66 N.W.2d 881, 53 A.L.R.2d 218.
A civil law servitude has been compared with the “easement” of common law. The following statements found in American Jurisprudence are pertinent:
“The term ‘easement’ has been variously defined. An easement has been said to be a privilege which the owner of one tenement has a right to enjoy over the tenement of another. It has also been defined as a right which one person has to. use the land of another for a specific purpose not inconsistent with a general property in the owner, or as a servitude imposed as a burden on land. * * *
“A ‘servitude’ is the term used in the civil law to express the idea conveyed by the word ‘easement’ in the common law,, and may be defined as a right of the owner of one parcel of land, by reason of his. ownership, to use the land of another for a special purpose of his own, not inconsistent with the general property in the owner.” 25 Am.Jur.2d Easements and Licenses, Sec. 1, pp. 416-417.
“An easement is always distinct from the right to occupy and enjoy the land it *177 self. It gives no title to the land on which it is imposed, and confers no right to participate in the profits arising therefrom. It is not an estate in land, nor is it ‘land’ itself. An easement is, however, property or an interest in land. It is an incorporeal right or hereditament to which corporeal property is rendered subject. * * *
“An easement is not a lien or an equity. However, an easement which materially affects or interferes with the full use or enjoyment of the land which a vendor has contracted to sell has been held to constitute an encumbrance within the meaning of the rule requiring the vendor of realty to convey a good or marketable title free and clear of encumbrances.” 25 Am.Jur. 2d Easements and Licenses, Sec. 2, pp. 417-418. See, Louis Pizitz Dry Goods Co. v. Penney, 241 Ala. 602, 4 So.2d 167.
The right of expropriation demanded by plaintiff is a compulsory right. As early as 1870, the Civil Code in Book III provided for the compulsory transfer of property. Article 2630, relating to proceedings in expropriation, provides what the petition for expropriation shall recite and that it shall conclude, “with a prayer that the land be adjudged to such corporation upon the payment to the owner of all such damages as he may sustain in consequence of the expropriation of his land for such public work. All claims for land, or damages to the owner caused by its expropriation * * * shall be barred by two years’ prescription. * * * ” Article 2632 provides in part, “ * * * a jury[7] * * * shall * * * determine, after hearing the parties and their evidence, what is the value of the land described in the petition with its improvements, and what damages, if any, the owner would sustain, in addition to the loss of the land, by its expropriation. * * * ” These provisions are virtually the same as those set forth in Footnote 1, supra, (LSA-R.S. 19:2.1, subds. A(3) B) which were adopted many years later. Plaintiff, a pipe line company, exercised its rights under LSA-R.S. 45:254, supra, which provides that the expropriator shall proceed under the present state expropriation laws for use in its common carrier pipe line business. See, LSA-R.S. 19:1 et seq.
The record is replete to the effect that defendant’s property was or will be damaged and his sugar cane crop was or will be destroyed when plaintiff laid or will lay its pipe line.
Art. I, Sec. 2, La.Const, of 1921, provides:
“ * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”
Reiterating, LSA-R.S. 19:2.1 provides that all claims for property by, or for dam *179 ages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years. Again reiterating, West’s LSA-C.C. Art. 2630, supra, also states that all claims for land, or damages to the owner caused by its expropriation for the construction of any public works, shall be barred by two years’ prescription. West’s LSA-C.C. Art. 2632 further provides for a determination of what damages, if any, the owner of land sustains in addition to the loss of the land by its expropriation.
We have found no case with facts identical to those of the instant one, but we are constrained to conclude that the above laws express an intention of the legislature to provide for the payment of damages to a landowner whose crops are destroyed or damaged by the expropriation of a servitude. See, Stoufflet v. United Gas Pipe Line Company, La.App., 162 So.2d 828; Louisiana Rural Electric Corp v. Guillory, 224 La. 73, 68 So.2d 762; Louisiana Power & Light Company v. Ristroph, La.App., 200 So.2d 14; 251 La. 39, 202 So.2d 654; Louisiana Power & Light Company v. Dekle, 200 So. 2d 26, 251 La. 38, 39, 202 So.2d 653, 654.
The cases of Texas Gas Transmission Corporation v. Broussard, 234 La. 751, 101 So.2d 657; State through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6; and State through Dept. of Highways v. D. H. Sanders Realty Company, 244 La. 934, 155 So.2d 24, cited by plaintiff, are not apposite to the instant matter.
Laws must be read and considered together. West’s LSA-C.C. Art. 17; Abercrombie v. Gilfoil, La.App., 205 So.2d 461; Schwartz Supply Company v. Zimmerman, 228 La. 861, 84 So.2d 438. We find that Article 465, West’s LSA-C.C., supra, cannot, defeat and render nugatory the provisions of the general expropriation laws providing-for the payment of damages under certain enumerated circumstances. Our finding is-fortified and corroborated not only by the authorities cited supra, but also by the following paragraph of LSA-R.S. 48:218,, which provides for expropriation by the Department of Highways, “In expropriating-lands for rights of way, if any improvement of the landowner or any crops upon the land are damaged or destroyed by the location of the right of way, the owner may recover compensation, in addition to the compensation for the property or the right of way, for the actual injury to or destruction of the-improvement or crop.” Reason dictates and justice demands that there should not be,, nor was there intended to be, a discrimination between the rights and obligations of the Department of Highways and a pipe line company under the circumstances existing in this case. Therefore, a reading of the-Constitution and all of the above statutory law together compels a conclusion that the-expropriation of a servitude demands the *181 payment'of damages where such are suffered by the .owner of the land.
It leaps to the mind that rather than leave the instant industrial property idle and uncultivated while awaiting its use for industrial purposes, the owner exercised an owner’s right to plant a crop in order to obtain .revenue on its investment and meet its obligation to pay taxes. It should not be pen-alized because of its sound business judg-ment. It should not be deprived of what it has expended for preparing the ground, •planting, cultivating and fertilizing the crop, maintenance of equipment, labor and other •expenses incidental to the production thereof, as well as any profits to which it might 'be entitled. Cf. Stoufflet v. United Gas Pipe Line Company, La.App., 162 So.2d 828.
Since the Court of Appeal rejected defendant’s claim for damages to its crop, it made no determination of the amount due defendant; therefore, the matter must be •remanded to that Court for the determination of such amount.
For the reasons assigned, the judgment of ■the Court of Appeal, First Circuit, insofar .as it rejected the defendant’s claim for damages, is reversed and set aside. The matter is remanded to the Court of Appeal for a ■determination of the amount of damages ■due defendant. Costs of this Court are to be jaid by plaintiff; all other costs are to await final disposition of the cause.
SANDERS, J., concurs in the result.
BARHAM, J., dissents for written reasons assigned.
McCALEB, J., dissents, being in accord with the views expressed by BARHAM, J.

. LSA-R.S. 19:2 of the general expropriation laws provides:
“Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
“(7) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas;
5¡> 5¡í S¡¿ rj<
LSA — R.S. 19:2.1 provides:
“A. The rights of expropriation granted in R.S. 19:2 shall be exercised in the following manner:
“(3) The petition shall conclude with a prayer that the property be adjudicated to the plaintiff upon payment to the owner of all damages he may sustain in consequence of the expropriation.
“B. All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation. * * * ”

. LSA-R.S. 45:254, found in the Revised Statutes under “Public Utilities — Carriers” “Pipe Lines,” provides: “All persons included in the definition of common carrier pipe lines as set forth in R.S. 45:251 have the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common carrier pipe line business, and have the right to lay, maintain and operate pipe lines, together with telegraph and telephone lines necessary and incident to the operation of these pipe lines, over private property thus expropriated, and have the further right to lay, maintain and operate pipe lines along, across, over and under any navigable stream or public highway, street, bridge or other public place, and also have the authority, under the right of expropriation herein conferred, to cross railroads, street railways, and other common carrier pipe lines by expropriating property necessary for the crossing under the expropriation laws of this state. * * * ”

.David E. Black, an agricultural consultant, testified:
“I found that there was approximately eight acres involved in the right of way, five of which were growing cane, three of which were growing plant cane, for the total of eight acres. And to destroy that crop then on a strip fifty feet wide, it appeared that for those areas that would involve three years of loss plus the other areas there would be a total of approximately 400 tons of sugar cane that would either be destroyed or not produced as a result of the proposed construction.
*171 “ * ‡ S
“Well, I found that there were five acres for which there would be three crops of sugar cane that would be destroyed; and there were approximately throe acres for which there would be one year of sugar cane destroyed.”
In allowing the defendant sugar cane crop damage, the trial court stated, “It is the opinion of the Court that the damage suffered by the defendant in the loss of three (8) years of sugar cane is the sum of ONE THOUSAND AND NO/lOO ($1,000.00) DOLLARS per acre or EIGHT THOUSAND TEN AND NO/100 ($8,010.00) DOLLARS which amount should be paid the defendant for sugarcane damage.”

. All appraisers who testified herein made separate appraisals as to the value of the land and the value of the sugar cane crop.

. Alternatively, plaintiff contends that the trial court’s award was excessive.

. LSA-R.S. 9:4341, Source, Act 66 of 1874 and Act 93 of 1922, provides: “In addition to the privilege conferred by law, any planter or farmer may pledge or pawn any agricultural crop, either planted and growing or in contemplation of being planted, in order to secure the payment for advances in money, goods, and necessary supplies that he has received, may receive concurrent therewith, or may thereafter require, in order to enable him to prepare the ground, plant and grow the crop, harvest or gather same, or otherwise in the production thereof, by entering into a written pledge of the crop or any portion thereof. The pledge shall secure no debt other than for money, goods, and necessary supplies for the production of the crop for the current year, and for liaving the pledge recorded in the office of the recorder of mortgages of the parish where the agricultural crop is to be produced, or is being produced. The recorded contract shall confer upon the merchant or other person advancing the money, goods, and necessary supplies for the production of said agricultural product, a right of pledge upon the crop, the same as if the crop had been in the possession of the pledgee, to take rank in accordance with date of filing same for record. The right of pledge thus conferred shall be subordinate to that of the claim of laborers for wages and for the rent upon the land upon which the crop is being produced.” Of. Art. X, Sec. 11, La.Const. of 1921.

. By LSA-R.S. 19:4, trial by jury in expropriation matters was abolished.