# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-322


WILLIAM P. CREWS, JR.

VERSUS

HILLARD M. (MITCH) GRIFFITH


************

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT,
PARISH OF SABINE, NO. 54,013,
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

John B. Scofield
Phillip W. DeVilbiss
Scofield, Gerard, Veron,
  Singletary & Pohorelsky
Post Office Drawer 3028
Lake Charles, Louisiana  70602
(337) 433-9436
Counsel for Third-Party Plaintiffs/Appellants:
        Hillard Griffith
        Linda Sue Griffith

William C. Kaufman, III
Charles K. Watts
Seale, Smith, Zuber & Barnette
8550 United Plaza Blvd., Suite 200
Baton Rouge, Louisiana  70809
(225) 924-1600
Counsel for Third-Party Defendant/Appellee:
        Fidelity National Title Insurance Company

SULLIVAN, Judge.

Hillard "Mitch" Griffith and Linda Sue Griffith (the Griffiths) appeal a summary judgment dismissing their third-party demand against Fidelity National Title Insurance Company (Fidelity National), which had assumed a title insurance policy on property owned by the Griffiths that was the subject of an earlier lawsuit. For the following reasons, we affirm.

## Facts and Procedural History

In 1987, the Griffiths purchased 15.5 acres of property known as the "Pendleton Marina" adjacent to the Toledo Bend reservoir in Sabine Parish, Louisiana. At the time of the sale, the Griffiths also purchased a policy of title insurance covering the subject property from American Title Insurance Company (American Title), which company Fidelity National subsequently acquired. The property is traversed by two roads, named in 1997 as Merritt Mountain Road and Tom Sawyer Lane, that were depicted without names on a survey that was filed in the Sabine Parish conveyance records in 1983.

In 1995, Conrad Cathey, Judy Cathey, and other individuals (collectively the Catheys) purchased property adjacent to the Griffiths' land for the purpose of developing a subdivision. It is undisputed that the Catheys' property is an enclosed estate. In March of 1998, the Griffiths sued the Catheys, seeking a permanent injunction prohibiting them from trespassing on the Pendleton Marina roads and a declaratory judgment as to the legal status of the roads. The trial court in that suit found that the roads were privately owned, but that they had become subject to public use through thirty years acquisitive prescription. On appeal of that ruling, this court disagreed with the trial court's finding as to acquisitive prescription, holding instead that the Catheys, as the owners of an enclosed estate, were entitled to a right of

passage over the Griffiths' property under La.Civ.Code art. 689.[1] That judgment is now final. *See Griffith v. Cathey*, 99-923 (La.App. 3 Cir. 2/2/00), 762 So.2d 29, *writ denied*, 00-1875 (La. 10/6/00), 771 So.2d 85.

The current litigation arose when William Crews, Jr., the attorney who represented the Griffiths in the previous suit, filed suit to recover his legal fees. The Griffiths then filed a third-party demand against Fidelity National, alleging that the American Title policy it had assumed provided coverage for their claim against the Catheys. In the third-party demand, the Griffiths sought recovery for reduction in property value; costs, expenses, and attorney fees incurred in both suits; and damages, penalties, and attorney fees for breach of Fidelity National's obligations to its insureds under La.R.S. 22:658 and La.R.S. 22:1220.

The Griffiths eventually paid Mr. Crews the fees he sought in the main demand, leaving only their third-party demand against Fidelity National at issue. After a hearing, the trial court granted Fidelity National's motion for summary judgment, finding that its policy did not provide coverage for the Catheys' right of passage, as that predial servitude was not "of record" when the policy was issued.

**Discussion**

Appellate courts review summary judgments *de novo*, applying the same criteria as the trial court in determining whether a summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). Under La.Code Civ.P. art. 966(B), the mover is entitled to judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1]Louisiana Civil Code Article 689 provides: "The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion."

2

affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."

The Griffiths argue that the policy provides coverage for their claim against the Catheys because it involves "[l]oss or damage . . . costs, attorneys' fees and expenses . . . sustained or incurred by the insured by reason of: . . . any defect in or lien or encumbrance on such title." In denying coverage, Fidelity National has consistently relied on the exclusion: "This policy does not insure against loss or damage by reason of the following: . . . Roads, ways, streams, or easements, if any, not shown of record . . . ."

In well-written reasons for judgment, the trial court noted that the roads on the property "had never been declared or dedicated to public use"and that "there is no evidence that a servitude of passage had ever been established over these roads by an act translative of title per C.C. art. 722."[2] The trial court further commented that the mere filing of the survey in 1983 did not establish a public record or a servitude. Concerned that any other interpretation would require examining attorneys to know of unrecorded servitudes or to anticipate future events, the trial court concluded that Fidelity National's policy did not provide coverage "because those servitudes were not 'of record' at the time of the title opinion."

The Griffiths argue that the trial erred in not considering the Catheys' physical intrusions on the property, as well as their claim that the roads were owned by the public, as "encumbrances" covered by the policy. They further argue that the trial

---

[2]Louisiana Civil Code Article 722 provides: "Predial servitudes are established by all acts by which immovables may be transferred. Delivery of the act of transfer or use of the right by the owner of the dominant estate constitutes tradition."

court erred in reading into the policy a provision that it does not cover defects or encumbrances not observable by a title examiner prior to the issuance of the policy.

We disagree. Without expressly articulating such, the trial court essentially applied the exclusion that the policy does not provide coverage for "[r]oads, ways, streams, or *easements*, if any, not shown of record . . . ." (Emphasis added.) Although the parties expended much effort debating whether the "roads" were "of record," the trial court focused instead on the legal basis for the Catheys' use of the roads, *i.e.*, their right of passage over the Griffiths' property to the nearest public road. One definition in Black's Law Dictionary (5th ed. 1979) of "easement" is "[a] right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner." In *Humble Pipe Line Co. v. Wm. T. Burton Industries, Inc.*, 253 La. 166, 217 So.2d 188 (1968), the court recognized that "[a] 'servitude' is the term used in the civil law to *express the idea* conveyed by the word 'easement' in the common law." *Id.* at 192 (quoting 25 Am.Jur.2d Easements and Licenses, Sec. 1) (emphasis added). Although much has been written distinguishing the terms,[3] we find that the only reasonable interpretation of the exclusion is that it applies to a servitude such as the Catheys'. Otherwise, as the trial court predicted, the reliability of all title opinions in Louisiana would be undermined.

The Griffiths also argue that Fidelity National at least had an obligation to defend them against the Catheys' claims and that Fidelity National arbitrarily and capriciously denied their claim without conducting a meaningful investigation.

---

[3]Black's Law Dictionary (5th ed. 1979) explains that "'servitude' rather has relation to the burden or the estate burdened, while 'easement' refers to the benefit or advantage or the estate to which it accrues."

4

In *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969) (citation omitted), the supreme court explained:

> [T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
>
> Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured.

Although the duty to defend is greater in scope than the duty to pay damages, "if it is clear that the allegations of the plaintiff's petition refer *only to acts or omissions that are excluded from coverage under the terms of the policy, then the insurer owes no duty to defend.*" *Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So.2d 158, 160 (La.App. 3 Cir. 1992) (emphasis added).

In their petition for intervention in the previous suit, parties aligned with the Catheys alleged that the two roads on the Griffiths' property were part of the Sabine Parish public road system, having been used by the public for "many, many years" and having been designated as public roads on "numerous public maps." In the alternative, the intervenors also sought recognition of their right of passage, should the roads not be considered public. In finding these allegations did not trigger a duty to defend, the trial court stated:

> [I]s an examiner of title bound to know what "numerous public maps" reveal in the absence of an actual public record establishment of the public road or servitude of passage? . . . The phrases [sic] "of record" cannot be read so broadly as to include all vehicle travel paths that appear on every survey filed in the conveyance records. In this case, the travel path is a clearly defined paved (at least in part) road. The

Griffiths are seeking insurance against the *prospective determination of the character of the road*. That is not the purpose of title insurance.

. . . .

Fidelity did not provide coverage for servitudes of passage established either by virtue of acquisitive prescription or because of an enclosed estate because those servitudes were not "of record" at the time of the title opinion. Nor were there allegations of a defective title examination that would trigger Fidelity's duty to defend the Griffiths.

(Emphasis added.)

We agree with the trial court that the intervenors' allegations fall within the policy's exclusion; therefore, summary judgment was appropriately granted.

**Decree**

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Hillard and Linda Griffith.

**AFFIRMED.**