FOURNET, Chief Justice.
The plaintiff, Louisiana Rural Electric Corporation, as successor and assignee of Central Louisiana Electric Co., Inc., is seeking (1) to cancel and set aside a’ right-of-way deed granted to the latter company by the defendant, Marion Guillory, on the ground that said contract was vitiated because of mutual error, and to be reimbursed the sums paid as consideration therefor— $85 for the right-of-way and $915 as damages ; and (2) to secure a right-of-way extending 100 'feet in width and 1,417 feet in length, connecting with rights-of-way acquired from, adjacent property owners, for the purpose of constructing, repairing, replacing, operating and removing at will a high power transmission line, upon payment to the defendant of all damages he may sustain in consequence of said expropriation.
In his answer the defendant, in effect, denied that there had been mutual error in the deed by which the right-of-way had been granted to plaintiff’s assignor, and pleaded that said contract was binding, being the result of a compromise following an expropriation suit; that a plat showing precisely the desired location of the right-of-way was attached to the compromise agreement and made part thereof by reference ; and inasmuch as the plaintiff already has a valid right-of-way over his property it is not entitled to another. As an alternative plea, the defendant asked for $5,000 as damages if the right-of-way sought by the plaintiff were granted. The defendant further, by way of exceptions of no cause or right of action, objected to this suit to cancel and annul the right-of-way permit on the ground that the pláintiff’s remedy, if any, is an action to reform the instrument.
The judgment of the trial court revoked and cancelled the previous right-of-way deed, and decreed expropriation .of the right-of-way sought by the plaintiff, placing a value thereon of $425 and adjudging damages in connection therewith of $1,115;. said award being made subject to a credit in favor of plaintiff for the $1,000 previously paid to defendant.. Both parties perfected devolutive appeals to this Court
*78 Although the record does not so disclose, during oral argument of this case it was admitted by attorneys for both sides that the transmission line has now been completed over the right-of-way decreed by the lower court’s judgment, the amount of the award having been deposited in the registry of court pending the outcome of this appeal; so that only two questions remain to be decided on the basis of the record before us: (1) the plaintiff’s right to cancellation and revocation of the contract of its assignor, and (2) whether the award of the lower court should be disturbed.
The facts, as revealed by the pleadings and the testimony of witnesses, are that during the years 1949 and 1950, Central Louisiana Electric Company, Inc., in connection with its plan to construct a heavy transmission line extending in a northwesterly direction from its generating plant at St. Landry, Evangeline Parish, to connect with a heavy transmission line in Rapides Parish, acquired right-of-way permits from owners of the rural lands bounding defendant’s property to the north and south, but negotiations conducted for a like purpose with defendant were protracted and no agreement was reached. There was already an electric distribution line across the front of defendant’s property (a rectangular tract containing approximately 250 acres, the eastern half woodland, the western half under cultivation, with a fence separating the two sections), the servitude for that line having been gratuitously granted at the solicitation of Central Louisiana Electric Company in 1941; and defendant was unwilling to have another line over his land, since it would interfere materially with the cultivation of his cotton, unless it were placed in the eastern, or wooded, area. Expropriation proceedings followed, in which a right-of-way was sought over defendant’s property similarly as in this suit. To the petition in that proceeding was attached a map indicating the proposed right-of-way as extending in a northwesterly direction over defendant’s land, on a compass bearing North 28 degrees, 47 minutes West (so as to make a connection between rights-of-way secured on properties below and above); the fence was shown as bisecting the tract, and two supporting structures for the line were prescribed— one, Structure No. 44, to be located in the southern portion of defendant’s field 12 feet west of the fence, and the other, Structure No. 45, to be placed on the northern boundary outside of the field. After considerable negotiation between the parties this litigation resulted in a compromise agreement dated September 28, 1950, which declared that only two structures were to be erected on grantor’s land and these were to be placed as shown by the plat attached to the grantee’s petition in the expropriation suit. The recited consideration in the right-of-way deed was $85, and the payment in advance for all damages, assessed at $915, was contemporaneously settled by. separate instrument.
*80 The right-of-way so granted, together with similar permits secured from landowners in the vicinity, were acquired by the plaintiff, who assumed the obligation to' construct the whole line.
In the course of construction, when plaintiff’s employees reached the defendant’s property in August, 1951, proceeding in a straight line from the right-of-way to the south, they crossed the southern boundary of his fields and began to cut through his crops at a point approximately 190 feet west of the fence — instead of near the fence, as was necessary in order-to permit the erection of Structure No. 44 at a point 12 feet west of the fence, as shown on the plat — whereupon the defendant immediately stopped any further work. The fact then became apparent that the center line of the right-of-way, in order to • cross defendant’s property at bearing North 28 degrees, 47 minutes West, so as to connect in a straight line with adjoining rights-of-way, passes 190 feet west of defendant’s fence at the point where Structure No. 44 stands, and that defendant’s fence had been erroneously located on the plan as prepared by the engineers of Central Louisiana Electric Company. Failure to reach a satisfactory agreement resulted in this suit.
We think the evidence unmistakably shows that the right-of-way sought to be acquired by the Central Louisiana Electric Company in the original expropriation suit coincides with and is identical to the one actually sued for and acquired in this proceeding, i. e., a direct extension or' proj ection of a right-of-way on a compass bearing of North 28 degrees, 47 minutes West,' over defendant’s land to connect in a straight line with rights-of-way acquired over lands of adjacent property owners to the north and south; and that although the plat shows Structure No. 44 at precisely 12 feet west of the fence, actually the center line of the right-of-way passes 190 feet west of the fence at the point where Structure No. 44 is indicated. The erroneous location of the fence was obviously due to the fact that the survey was not made on the ground. The record is equally clear that the defendant, in compromising the previous expropriation suit and executing the deed of September 28, 1950, by which the permit was granted,was influenced by his belief that Structure No. 44 would be located exactly 12 feet west of his fence and that he would thus be deprived of the use of only the small portion of cultivable land falling to the east and north of the right-of-way — a triangular strip measuring approximately one acre. Therefore the defendant’s argument that there was no error as to the thing contracted for, that is, the right-of-way, the sole error being the description of the right-of-way, and that consequently the plaintiff has mistaken his remedy by seeking the cancellation of the instrument rather than its reformation, is untenable in the light of the foregoing facts. See LSA-Civil Code, Articles 1819, 1821, 1823, 1841 et seq.
*82 The plaintiff contends that the district court’s award of $425 for the right-of-way expropriated, and $1,115 as damages, is excessive and not supported by the evidence. Counsel submit that the evidence warrants an award of only $1 a rod for the land (85 rods) over which the right-of-way passes, on the basis of the only evidence in the record as to its fair market value; and contend that the award of the lower court should be reduced to $85 for the right-of-way, $25 for the land actually taken, $45 for crop damage, and otherwise should be affirmed. On the other hand, the defendant contends that the award should be increased to $5,000; he claims that the new right-of-way causes him to lose approximately six acres of cultivable land as he intends to move his fence to the west so as to have the transmission line completely out of his field.
Under the well-settled jurisprudence of this Court, the amount due for private property expropriated for public purposes is the fair market value when taken, plus any damages caused by such taking. See American Tel. & Tel. Co. v. East End Realty Co., Inc., 223 La. 532, 66 So.2d 327, and authorities there cited; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1. While plaintiff’s witnesses did testify that plaintiff had paid $1 a rod for similar rights-of-way, such testimony is persuasive but not necessarily conclusive. The right-of-way here granted falls totally within defendant’s cultivated field; it measures 100 feet in width by 1417 feet in length, and the total area within the lines of said right-of-way is 3.253 acres. The testimony of defendant’s witnesses showed that the annual yield from defendant’s crops varied from $150 to $200 per acre. Under these facts and circumstances we cannot say that the amount awarded by the trial judge was excessive in this respect.
As to the award for damages, we are not impressed with either the plaintiff’s or the defendant’s argument. Although the trial judge, in fixing the damages at $1,115, did not give written reasons, wé are confident that he took into consideration the fact that for a right-of-way comparable in size but nearer the fence, the defendant was willing to accept, and the plaintiff’s assignor willing to pay, $915 “as payment in full in advance for all damages except such as may be caused to growing crops and fences,” and the present servitude is more onerous since its location is such that there remains a narrow strip the full width of the field to the right, adjoining the woodland, which has been rendered difficult of cultivation because of this fact. Besides, the defendant now has an added claim because of damage to his growing crops at the time plaintiff’s employees began cutting the line through his field.
For the reasons assigned, the judgment appealed from is affirmed.