BOLIN, Judge.
Meadors seeks by this action to have Cravy remove a fence erected by defendant and allegedly encroaching on property belonging to plaintiff; to be recognized as owner of certain described property; and to be awarded damages for trespass. An exception of prematurity was filed by defendant on the ground plaintiff had agreed to have the entire forty acres surveyed at his own expense but such survey had never been made. Subsequently thereto the survey was made and defendant answered the suit admitting certain allegations of plaintiff’s petition but, assuming the position of plaintiff in reconvention, alleged he had a legal right to enter and fence the aforesaid lands under a written agreement of exchange which will be set forth in full later in this opinion.
Following trial on the merits the lower court interpreted the agreement as prayed for by defendant. Plaintiff was ordered to convey certain property to defendant in exchange for property to be conveyed to plaintiff by defendant. From this judgment plaintiff appeals and defendant has neither appealed nor answered the appeal.
O. R. Meadors owns two contiguous 80-acre tracts, a portion of which borders on Lake Bisteneau, less three lots in the SWj4 of the NW¡4 of Section 18, Township 17 North, Range 9 West in Webster Parish, Louisiana. The three mentioned lots are owned by Paul D. Sands, Paul Coulon and H. C. Cravy, all of whom purchased from T. A. Glass, petitioner’s vendor.
Shortly after defendant Cravy’s purchase in 1953 of his lot as a campsite he began the erection of a camphouse in the southeast corner thereof. Sometime later in 1954, observing timber cutting operations taking place near his property, he hastily erected a wire fence on the west and north of his lot, extending the said fence to the lake and thereby enclosing some three acres belonging to plaintiff.
Defendant has not attempted to deny plaintiff’s title to this disputed land, but claims a right to have conveyed to him all the property enclosed by the fence in exchange for a like amount off the west of defendant’s lot, by virtue of an agreement signed by plaintiff and defendant on August 18, 1956. The pertinent portion of the so-called agreement is set forth below:
“The following agreement is made b~ tween H. C. Cravy and O. R. Meadors:
O. R. Meadors is to have the SWj4 of NWj4 Sec. 18, Township 17 North Range 9 West surveyed at his expense; after this survey is made, if H. C. Cravy’s property line fence is on property owned by O. R. Meadors, he will move it; then they are to make a new deed under which H. C. Cravy’s property is to be moved Fifty (50) feet East of its present location so that there will be no property owned by O. R. Meadors between H. C. Cravy and the Lake.”
Testimony of Mr. Graydon K. Kitchens, attorney who acted as Notary Public on the “agreement”, reflected that when the parties signed the instrument they had before them a small unofficial diagram purportedly representing the tract in dispute. From this drawing it appeared that Cravy’s lot fronted on Brushy Creek (actually a part of Lake Bisteneau) and that an exchange of fifty feet on the east would give defendant lake frontage on his entire eastern line. This plat or sketch was later shown to be *548 completely erroneous. At that time Mea-dors owned only the West 1/2 of the NW}41 however some three months later he purchased the SE14 of the NWJ4 which gave him title to all the property between defendant’s east boundary and the lake.
From this and the testimony and allegations of the parties the lower court concluded the intention of the parties was to place defendant’s property on the lake front in exchange for a conveyance to plaintiff of additional timber footage from the back or west of defendant’s lot.
An accurate survey of eighty acres, including the disputed property, dated September, 1958, reflected there was actually some six hundred feet of swamp or marsh between defendant’s northeast corner and the lake; that the meander line ran thence west and that an extension of defendant’s south property line east to the lake would be a distance of 169 feet
Thus, when this suit was tried plaintiff owned property all around defendant’s lot, except for the lot on the south owned by Coulon, and defendant had access to the lake from his property only by means of a very shallow inlet on the south created by Brushy Creek. Defendant introduced testimony of W. L. Elkins to the effect the water at that point was only three to eight inches deep for a distance of forty feet and that to use this property as a fishing camp and to put a boat in would require dredging of a channel to the deepwater.
Plaintiff testified he intended only to convey to defendant approximately fifty feet on the east, extending to the lake on the south and that by the words “so that Meadors will own no property between Cravy and the lake” he meant to convey all the property “in front of Cravy’s camphouse” (that is, on the south) which would effect the purpose of the agreement.
Cravy agreed the important words in the instrument were “so that there will be no property owned by O. R. Meadors between H. C. Cravy and the Lake”; but, contrary to plaintiff’s interpretation, contends this clause was indicative of the intention there should be no property belonging to Meadors between defendant’s east boundary and the lake.
The lower court having interpreted the agreement as contended for by defendant ordered plaintiff to convey to defendant a tract of land 210 feet wide north and south beginning at the east line of defendant’s lot and extending east a distance of 169 feet (which placed the lot 109 feet into the SE}4 of the NW)4), and ordered defendant to convey to plaintiff a tract of equal amount off the west side of defendant’s lot.
Appellant specifies that the district court erred in upholding the “agreement” of August 18, 1956, between the parties to this suit as a valid contract, and, more particularly, in failing to find that the “agreement” was vitiated by the parties’ mutual error of fact. Further, having found the “agreement” to be a valid contract, the district court erred in finding that the parties intended by the “agreement” that plaintiff was to convey to defendant certain land outside the SWJ4 of the NW14 of Section 18, Township 17 North, Range 9 West, Webster Parish, Louisiana. Finally, the district court erred in failing to award damages against the defendant for trespass and in failing to order defendant to move any fence of his which is located on plaintiff’s property.
Our examination of the record leads us to conclude that in drawing the agreement plaintiff and defendant were relying on the belief that Brushy Creek came across the corner of defendant’s lot and that an additional fifty feet east would take the defendant’s property line well out into the lake. This belief was fostered by reliance on the small erroneous plat, referred to earlier. However, examination of the later survey shows the edge of the lake is actually 169 feet due east of the southeast corner of defendant’s lot and runs northeast past a point approximately six hundred feet due east of the northeast corner of defendant’s lot.
These undisputed facts convince us the parties signed the instrument here *549 sought to be interpreted while laboring under a mutual mistake as to a material fact, i.e., the correctness of the sketch reflecting the distance of the water’s edge east from defendant’s lot. We are further convinced this material fact was the principal cause of and bore upon the motive therefor, and that such mistake vitiated the contract under the pertinent provisions of the LSA-Civil Code, particularly Articles 1779, 1819, 1820, 1821, and 1823.
Article 1779 enumerates the four requisites of a valid contract:
“1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose.”
Consent is defined as follows in Article 1819:
“Consent being the concurrence of intention in two or more persons, with regard to a matter and understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
Error;
Fraud;
Violence;
Threats.”
The kinds and effect of error are delineated in Articles 1820, 1821 and 1823, in the following manner:
Art. 1820:
“Error, as applied to contracts, is of two kinds:
1. Error of fact;
2. Error of law.”
Art. 1821:
“That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.”
Art. 1823:
“Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.”
Analogous to the case at bar is Louisiana Rural Electric Corp. v. Guillory, 224 La. 73, 68 So.2d 762 (1953) wherein plaintiff electric corporation sought cancellation of a right of way deed granted by defendant on the ground of mutual error. Defendant denied error and pleaded that the contract was binding, being the result of a compromise following an expropriation suit, and that a plat showing precisely the location of the desired right of way was attached to the compromise agreement and made a part thereof by reference. The facts disclosed that the plat attached to the deed sought to be canceled showed a then-proposed transmission line right of way traversing defendant’s land on the compass bearing desired by plaintiff, and showed a structure to be constructed on the right of way as situated twelve feet west of a fence which ran along the eastern edge of defendant’s cultivable land. However, it was discovered when plaintiff began to build on the right of way that the fence had been erroneously located on the plat, and that the right of way actually ran through defendant’s cultivable land at a considerable distance further from his fence than as shown on the plat, with the proposed right of way structure to be actually 190 feet west of the fence instead of twelve feet west of the fence as shown on the plat.
*550 In holding that the contract was vitiated by the mutual error of the parties the Supreme Court stated:
“ * * * The erroneous location of the fence was obviously due to the fact that the survey was not made on the ground. The record is equally clear that the defendant, in compromising the previous expropriation suit and executing the deed of September 28, 1950, by which the permit was granted, was influenced by his belief that Structure No. 44 would be located exactly 12 feet west of his fence and that he would thus be deprived of the use of only the small portion of cultivable land falling to the cast and north of the right-of-way — a triangular strip measuring approximately one acre. Therefore the defendant’s argument that there was no error as to the thing contracted for, that is, the right-of-way, the sole error being the description of the right-of-way, and that consequently the plaintiff has mistaken his remedy by seeking the cancellation of the instrument rather than its reformation, is untenable in the light of the foregoing facts. See LSA-Civil Code, Articles 1819, 1821, 1823, 1841 et seq.”
See also the early case of Calhoun v. Teal, 106 La. 47, 30 So.2d 288.
Applying the foregoing articles and jurisprudence to the facts of the instant case we conclude the agreement here relied on by defendant is invalid and unenforceable due to a mutual error as to a material fact. In the light of this interpretation it is unnecessary for us to make a finding as to which version of the “agreement” is the most reasonable.
Plaintiff introduced no evidence to substantiate his claim for damages for the alleged trespass. This portion of plaintiff’s claim is, therefore, rejected.
The judgment appealed from is accordingly reversed, annulled and set aside and there is now judgment in favor of plaintiff, Obitt R. Meadors, and against defendant, H. C. Cravy, decreeing and recognizing plaintiff to be the owner of the SEJ4 of NW}4 and SWJ4 of NWJ4, Section 18, Township 17 North, Range 9 West, Webster Parish, Louisiana, less and except those tracts of land in the described property totaling approximately seven (7) acres which had theretofore been sold by T. A. Glass to P. D. Sands, H. C. Cravy and Paul S. Coulon and recorded in the Conveyance Records of Webster Parish, Louisiana.
Defendant is further ordered to remove within thirty (30) days any fence which he has caused to be erected on any of plaintiff’s above described property.
It is further ordered that defendant pay all costs.
Reversed and rendered.