317 So.2d 240 (1975)
Mrs. Ruby Alexander JONES, Plaintiff-Appellant,
v.
Mrs. Lucille Cox DeLOACH, Defendant-Appellee.
No. 12634.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1975.
James E. Franklin, Jr., Shreveport, for plaintiff-appellant.
Jackson B. Davis, Shreveport, for defendant-appellee.
Before HALL, DENNIS and MORRIS, JJ.
HALL, Judge.
Plaintiff, Ruby Alexander Jones, sued the defendant, Lucille Cox DeLoach, to rescind the sale of a residence sold by defendant to plaintiff by a credit sale deed.
The grounds asserted by plaintiff to set aside the sale can be summarized as follows:
(1) The contract contains an impossible condition and error as to a principal cause in that the monthly payment stipulated in the credit sale deed is not sufficient to pay interest on the balance due and will never reduce or pay the principal balance due.
(2) There was further error as to a principal cause in that a substantial motive of the buyer was to rent rooms in the residence to lodgers which she cannot do because of applicable zoning regulations and building restrictions.
*241 The grounds asserted by defendant to uphold the validity of the sale can be summarized as follows:
(1) The sale was not made on an impossible condition or in error because the deed gives the purchaser the right to make prepayments and the purchaser expressed an intent to make prepayments, thus making payment of the purchase price possible.
(2) The renting of rooms to lodgers does not violate the building restrictions or zoning ordinance and even if there was a violation it has existed for more than two years and any objections thereto have prescribed under applicable statutes.
Neither party sought or prayed for reformation of the contract. After trial the district court held that since the deed grants the purchaser prepayment privileges, payment of the consideration for the property is not impossible. The court further held that the rental of rooms to others by the purchaser, as she contemplated and was actually doing at the time of trial, was not a violation of the building restrictions or zoning ordinance.
From a judgment rejecting her demands, plaintiff appealed. We reverse and order the sale set aside.
The evidence discloses that Mrs. DeLoach, a widow, offered her residence on Fern Street in Shreveport for sale for a price of $49,500 and was asking for a $10,000 cash part payment with the balance to be financed at an interest rate of 7½% per annum with monthly payments of $295. Mrs. Jones, also a widow, contacted Mrs. DeLoach concerning purchase of the property and advised the seller she could not pay more than $8,000 cash and $225 per month, the cash payment representing most of her life savings and the monthly payment amount being based on a limited monthly income primarily from an oil check she regularly received. Mrs. DeLoach was at that time renting one or two rooms to lodgers and Mrs. Jones expressed an intent to use the rental of rooms to help make the monthly payments. She inquired as to whether or not she could rent rooms and was assured by Mrs. DeLoach and Dottie Ports, the seller's daughter and a real estate agent, that she could do so.
An agreement was reached and Dottie Ports prepared a sales contract which was executed by the seller and purchaser. Thereafter, the seller, her daughter, and the buyer went to the office of the Clerk of Court of Caddo Parish and a credit sale deed was prepared pursuant to their instructions by a deputy clerk of court. The deed is on a standard printed form conveying the property "subject to any recorded servitudes, building restrictions, and to the statutory servitudes of the Caddo Parish Levee Board". The deed recites a consideration of $49,500, payable $8,000 cash and the balance in one note for $41,500, bearing interest at the rate of 7½ per annum from date until paid, "the principal and interest due on said note being payable" in consecutive monthly installments of $225 per month until said note is paid in full. The deed provides that "the amount of each monthly installment shall be applied and credited first to the accrued interest then due on the total unpaid principal balance, and the remainder of the installment shall be applied to the reduction of the unpaid principal balance". The deed also provides "the purchaser is granted full prepayment privilege". The deed was executed by the parties, duly recorded, and the buyer took possession of the house.
The note was placed with a bank for collection. When Mrs. Jones made her first monthly payment she was told by a bank official the payment of $225 was not sufficient to cover the amount of accrued interest and no part of the payment could be applied to reduction of the principal balance *242 due. One month's interest on the principal was approximately $259.
The buyer contacted an attorney, demand for cancellation of the sale was made and refused, and this suit ensued.
The evidence is that at no time during the negotiations was anything ever specifically said by anyone concerned about whether or not the $225 monthly payment would be sufficient to pay interest and reduce the principal. Neither of the parties, the realtor daughter, or the notary before whom the deed was executed were aware that the $225 would not even pay the interest on the balance of the purchase price.
There was some discussion during the negotiations that the buyer might sell some other property and might at some time be in the position of making prepayments on the note, but there was no firm commitment or agreement in that regard.
Louisiana Civil Code Articles pertinent to the "impossibility" issue are:
"Art. 2031. Every condition of a thing impossible, or contra bonos mores (repugnant to moral conduct) or prohibited by law, is null, and renders void the agreement which depends on it."
"Art. 2033. Physical and moral impossibilities only are intended by the preceding articles. If the condition be only relatively impossible, that is to say, impracticable by the obligor, only from the want of skill, strength or means, but practicable by another, it is not an impossible condition."
"Art. 1891. The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it."
The following Civil Code Articles are pertinent to the "error" issue:
"Art. 1779. Four requisites are necessary to the validity of a contract:
1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose."
"Art. 1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by
Error;
Fraud;
Violence;
Threats."
"Art. 1820. Error, as applied to contracts, is of two kinds:
1. Error of fact;
2. Error of law; [.]"
"Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."
"Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must in some point, which was a principal cause for making the *243 contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."
"Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."
In the case before the court the credit sale deed itself discloses the parties' intent that the monthly payment not only pay interest but reduce principal. The instrument provides that "principal and interest" are payable in consecutive monthly installments of $225 each. The instrument provides that the monthly payments shall be applied first to accrued interest and then to reduction of the unpaid principal balance.
The evidence is clear that no one involved, the seller, buyer, seller's daughter, or notary was aware that the payment was not sufficient to do what the contract called for it to do, that is, pay interest and principal.
It would be impossible for the buyer to pay the balance due, principal and interest, in the manner in which the parties contracted, that is, by paying $225 per month. The parties contracted to do an impossible thing. The object of the obligationto pay the balance of the purchase price in monthly installments of $225is impossible.
Likewise, it is clear that there was error on the part of both seller and buyer. The amount agreed on for the monthly installments will not pay the interest and reduce the principal as the contract provides.
In this day and time when most sales of residences are made with maximum financing, either by the seller or by a lending institution, the terms of the financing are often the primary consideration of the transaction. The buyer often is more concerned with the amount of the monthly payment than with the total amount of the price of the property or the total amount of the loan. Customarily, the monthly payment is viewed as an amount which will pay interest on the balance owed and will reduce the principal, usually over an extended period of years.
That these motives and objections were paramount in the instant case is demonstrated by the testimony and by the credit sale deed. The maximum amount of the monthly payment was of prime importance to the buyer and this fact was communicated to the seller. The parties' intent that the monthly payment be sufficient to pay interest and principal is manifest from the deed itself.
It is equally important to the seller that the payment be sufficient to pay both interest and principal. Under the contract as written, the seller could never enforce payment of the balance of the purchase price so long as the $225 monthly payments are made.
There was error on the part of both seller and buyer. It was error as to a principal cause, motive or end of the contract. Under the code articles such error vitiates consent and invalidates the agreement. See Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954); North Development Company, Inc. v. McClure, 276 So.2d 395 (La.App. 2d Cir. 1973); Meadors v. Cravy, 165 So.2d 546 (La.App. 2d Cir. 1964). Compare Cryer v. M & M Manufacturing Company, Inc., 273 So.2d 818 (La.1973).
The fact that the buyer has the right to make prepayments over and above the stipulated monthly payments and thereby reduce the principal balance does not make that which the parties contracted to do any the more possible or change the nature of the error. The parties contracted that *244 principal and interest be paid in monthly installments of $225 and this remains impossible of fulfillment.
The holding of this court is that because of impossibility and error, the buyer is entitled to have the sale set aside.
Plaintiff prayed for return of the $8,000 paid as part payment of the purchase price and return of the monthly installments paid. She is clearly entitled to return of the cash portion of the purchase price paid. It may be that the defendant is entitled to credits or adjustments for plaintiff's use of the property since the date of the sale, rents collected, or the like. The status of the record and the evidence contained therein are not sufficient to adjudicate these matters. It is appropriate that the action be remanded to the district court for further proceedings relating to any adjustments to be made between the parties and in due course for entry of a final judgment rescinding the sale and ordering return of such amount as is found to be due from the seller to the buyer.
In view of the conclusions reached on the issues discussed above, which are determinative of the case, it is unnecessary to discuss the issues related to the building restrictions and zoning ordinance.
For the reasons assigned, the judgment of the district court is reversed, the sale of the property described as:
Lot 139 of a Replat of CLINGMAN PARK SUBDIVISION, UNIT NO. 4, a subdivision of the City of Shreveport, Parish of Caddo, as per plat and map recorded in Conveyance Book 700, Page 129, of the records of Caddo Parish, Louisiana, together with all buildings and improvements thereon
is ordered set aside, and the case is remanded to the First Judicial District Court for further proceedings in accordance with law and with this opinion.
Reversed and remanded.