United States Court of Appeals,

Fifth Circuit.

No. 92-4388.

Norman P. HYMEL, Jr., Plaintiff-Appellee,

v.

UNC, INC., Defendant-Appellant.

July 2, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, JOLLY, and DEMOSS, Circuit Judges.

WISDOM, Circuit Judge:

The holder/payee of a promissory note sued the maker to enforce the debt. The maker raised the defense of error in fact regarding the price stated in the contract. The district court found that the note clearly established the debt. In addition, the court held that evidence offered by the maker to show that he had not intended to bind itself for the amount evidenced by the note was "irrelevant" and granted summary judgment in favor of the holder. In this diversity case, we hold that under Louisiana law a genuine issue of material fact exists as to whether there was error regarding the principal cause of the contract. Further, we hold that under Louisiana law parol evidence is admissible to resolve this issue. Consequently, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

I.

In August 1991, UNC Resources[1] ("UNC") purchased all of the outstanding stock in Normco Contractors, Inc. ("Normco"), a Louisiana based corporation. At the time of the sale, Norman P. Hymel owned 67% of Normco's stock. His lawyer, Tracy Barstow, owned the remaining 33% of the stock. In exchange for his stock, Hymel received a promissory note for $2,350,000 along with other

---

[1]UNC Incorporated, the defendant/appellant in this case is the successor in interest to UNC Resources.

consideration.[2]

The terms of the note provide:

Principal and interest under this Note shall be due and payable in three (3) annual payments of $50,000 each on July 31 of each of 1982, 1984 and 1986, and subject to Section 3.1(f)(ii) of the Joint Merger Agreement, an additional payment on July 31, 1986, in the amount of $2,200,000.

Section 3.1(f)(ii) of the Joint Merger Agreement states:

no payment or issuance of cash, stock or other consideration or compensation under (A) this section 3.1 (except under subsection (a)(iii)(C) thereof, the proviso at the end of this subsection (f) to the extent of the 1986 Payment defined therein and the note described in subsection 3.1(a)(iii)(B) to the extent of $50,000) (B) the Hamer Agreement or (C) paragraph 5 of said Employment Agreement, including without limitation any other payment under the notes described in subsections (a)(ii) and (a)(iii)(B) of this Section 3.1 or issuance of Equivalent UNC Stock under subsection (a)(iii)(D) of this Section 3.1, shall be made during the period commencing April 1, 1986, and continuing through July 31, 1991, except to the extent the aggregate value (on the intended date of such issuance or payments) of such cash, stock or other consideration or compensation issuable or payable (the "Current Payment Value"), when added to the aggregate value (at the time of payment or issuance) of all cash, stock and other consideration and compensation previously paid or issued under such items (the "Prior Payment Value"), does not exceed an amount equal to the sum of the 1986 payment (if made) plus 25% of the Cumulative Pre-Tax Earnings of the Surviving Corporation through March 31 immediately preceding any date on which such payment or issuance would otherwise occur, and any portion of such payment or issuance which exceeds such amount shall be *deferred* (pro rata) until such time (but not later than July 31, 1991) as such Current Payment Value when added to such Prior Payment Value does not exceed an amount equal to the sum of the 1986 Payment (if made) plus 25% of the Cumulative Pre-Tax Earning of the Surviving Corporation through March 31 immediately preceding the date of any such deferred payment or issuance; provided, however, that in the event that Cumulative Pre-Tax Earnings for the period commencing on the Cut-Off Date and ending on March 31, 1986 are equal to or exceed the sum of $28,800,000, Hymel shall receive Equivalent UNC Stock and/or cash having an aggregate value of $500,000 (the "1986 Payment") in addition to any amounts which may become payable under Section 3.1(a)(iii)(D), with principal and interest portions thereof being determined as set forth in Section 3.1(a)(iii)(C)(y).

UNC made all three of the $50,000 payments as scheduled. When the final $2,200,000 payment came due on July 31, 1986, UNC refused to pay because the conditions specified in Section 3.1(f)(ii) had not been met. Hymel did not object. Five years later, on July 1, 1991, Hymel demanded payment. UNC refused.

Hymel filed suit in state court to recover the final payment of 2.2 million due under the terms

---

[2]Hymel also received $1,000,000 in cash, 267,857 shares of UNC stock worth approximately $3,000,000, 5% of Normco's pre-tax earnings through March 31, 1986, the right to receive additional cash and UNC stock if Normco's pre-tax earnings exceeded a set amount during the earn-out period, and a five-year employment contract at $125,000 per year.

of the note. UNC removed the case to federal court based on diversity jurisdiction. After the case was removed and UNC answered Hymel's complaint, the case was set for a non-jury trial. Hymel immediately moved for summary judgment. UNC raised two defenses: (1) it argued that the note bound it to pay only if the contingencies listed in the Joint Merger Agreement were met; and (2) even if the note on its face did obligate it to pay the final payment, the obligation was not ultimately binding because it was based on an error of fact—namely that UNC intended to purchase Normco only if the final payment under the note was made contingent on future earnings. UNC offered three affidavits to support its second defense.[3]

First, the district court held that the note clearly and unambiguously bound UNC to pay the final 2.2 million dollars by July 31, 1991. It then addressed UNC's asserted defense of error in fact. The court held that the sale of Hymel's Normco stock was the principal cause of the contract/note. Based on this holding, it held that UNC's evidence, offered to show an error in fact relating to the price of the stock, was "irrelevant to a determination of error".[4] Limiting its analysis to the "four corners" of the agreement, the court granted summary judgment in favor of Hymel. In addition, the court granted post-judgment interest at a rate of 9% per annum. UNC appeals the court's grant of summary judgment as well as its decision to set interest at 9%.

We agree with the district court's interpretation of the note; however, we hold that the district court erred in holding that evidence offered to support UNC's allegation of error regarding price was irrelevant. Consequently, we vacate the district court's grant of summary judgment and remand the case for further proceedings consistent with this opinion.

II.

---

[3]UNC also offered evidence of collateral litigation between Hymel and the only other shareholder, his lawyer Tracy Barstow. Barstow sued Hymel to recover on a promise from Hymel that he would pay the similarly contingent final payment to Barstow whether or not the contingencies allegedly required by UNC were ever met. This litigation was offered to show that Barstow and Hymel both understood and believed that the final payment in Hymel's note, which was drafted at the same time and with the same language as the note issued to Barstow, was contingent on specified future earnings as UNC alleges.

[4]District Court Ruling, p. 5, citing *Hanover v. Petroleum Corp.,* 521 So.2d 1234, 1240 (La.App. 3d Cir.1988), *writ denied,* 526 So.2d 800 (La.1988).

The district court found that the terms of the note read with the terms of the referenced portion of the Joint Merger Agreement clearly and unambiguously bound UNC to pay the final payment of 2.2 million dollars to Hymel. We agree with this portion of the court's decision. As the district court noted, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent".[5] The language of the Joint Merger Agreement is admittedly convoluted, yet it is not ambiguous. All that Section 3.1(f)(ii) provides with regards to the final payment is that it may be *deferred* to 1991 if certain profit contingencies were not met in 1986. It clearly states that such deferral shall extend "not later than July 31, 1991".[6]

Our inquiry does not end at this juncture. UNC alleged error in fact regarding the price stated in the note as a defense to the obligation. In Louisiana, consent is essential "to the perfection of the contract".[7] Louisiana Civil Code article 1948 states, "[c]onsent may be vitiated by error, fraud, or duress".[8] Not every error will vitiate consent, but when error "concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party" it vitiates consent.[9] Further, under Louisiana law, testimonial (parol) evidence is clearly admissible to show error even where the contract language is clear and unambiguous.[10]

---

[5]La.Civ.Code Ann. art. 2046 (West 1993).

[6]Joint Merger Agreement Section 3.1(f)(ii).

[7]La.Civ.Code Ann. art. 2439 (West 1993).

[8]La.Civ.Code Ann. art. 1948 (West 1993).

[9]La.Civ.Code Ann. art. 1949 (West 1993). *See also First Acadiana Bank v. Bollich,* 532 So.2d 248, 250 (La.App. 3d Cir.1988) (Where the guarantor on a note alleged error as to the amount guaranteed and the court reformed the contract to require a guaranty only of the intended amount, not the amount stated in the note the guarantor signed).

[10]La.Civ.Code Ann. art. 1848 (West 1992) "(Testimonial or other evidence ... may be admitted to prove such circumstances as a vice of consent....");  *Kennedy v. Sanco Louisiana, Inc.,* 573 So.2d 505, 508 (La.App. 4th Cir.1990), *writ denied,* 578 So.2d 138 (La.1991);  *Gulf American Industries v. Airco Industrial Gases,* 573 So.2d 481, 487 (La.App. 5th Cir.1990);  *Bank of Coushatta v. Patrick,* 503 So.2d 1061, 1066 (La.App.2d Cir.1987), *writ denied,* 506 So.2d 1231 (La.1987);  *First National Bank of Ruston v. Mercer,* 448 So.2d 1369, 1375 (La.App. 2d Cir.1984);  *Daigle & Associates, Inc. v. Coleman,* 396 So.2d 1270, 1271 (La.1981) ("Under our longstanding jurisprudence parol evidence is admissible when there are allegations of fraud, *error,*

When an error is bilateral, that is, when both parties are in error, there is no problem. When that happens the contract may be rescinded or reformed. Further, in Louisiana, courts "have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract".[11] French courts have taken a very similar approach.[12] "At common law, on the other hand, unilateral error does not invalidate consent unless the error was known to the other party".[13] This difference between the common law and the civil on the subject of contractual error is discussed in "Error in the Formation of Contracts in Louisiana: A Comparative Analysis":

> Error results from ignorance of fact or erroneous conclusions of law. Insofar as error is regarded as the result of ignorance, its definition in Louisiana law is essentially the same as that of mistake at common law, usually defined as "a state of mind that is not in accord with the facts." It follows, then, that errors are to be taken account of, and that it will be the exceptional case where they are ignored.

> At common law, on the contrary, relief is exceptional, for as a general rule the common law is concerned with the manifestation of consent and not with inquiries into the mental states that give rise to it. Thus [Judge Learned Hand has] said, "A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties."[14]

> Professor Paul Litvinoff has explained the reason for the civilian rule:

> The rule that declares testimonial and other evidence inadmissible to negate or vary the contents of an authentic act or of an act under private signature presupposes that such an act evidences a valid, and therefore binding, obligation. For that reason—if no valid obligation arises from a written act because of a defect in its formation, such as the lack of

---

or mistake, to show that the instrument is not the expression of the actual intention of the parties."); *Jaccuzzo v. Fabregas,* 12 So.2d 16, 17 (La.App. 1st Cir.1943) ("It is too well established to require citation of authority that as between the original parties to a note where error or mistake is alleged, parol evidence is admissible to show the true intention of the parties.").

[11]Comment (d), La.Civ.Code art. 1949 (West 1993). *See also Marcello v. Bussiere,* 284 So.2d 892 (La.1973); *Jefferson Truck Equipment Co. v. Guarisco Motor Co.,* 250 So.2d 211 (La.App. 1st Cir.1971).

[12]*See* 6 Planiol et Ripert, Traité practique de droit civil francais 209-211 (2nd ed. Esmein 1952); Ghestin, La notion d'erreur dans le droit positif actuel 104-131 (1963); Malinvaud, "De l'erreur sur la substance", Recueil Dalloz Sirey, Chronique XXXI (1972); Litvinoff, " "Error' in the Civil Law", Essays on the Civil Law of Obligations, 222, 242-247 (Dainow ed. 1969).

[13]Comment (d), La.Civ.Code art. 1949 (West 1993).

[14]Timothy Hoff, *Error in the Formation of Contracts in Louisiana: A Comparative Analysis,* 53 Tulane L.Rev. 329, 335-36 (1979).

a party's valid consent, then the exclusionary rule has no legitimate field of operation. That is the case when a party gave his consent under the influence of an error that warrants rescission of the act contained in a written instrument. Because such an act cannot by itself prove that the consent of the parties who executed it was free from vice, other evidence is necessary, and therefore admissible, when a party seeks to show that the act the instrument contains is valid only in appearance.

Thus, if error is alleged between the original parties to a promissory note, testimonial proof is admissible to show the true intention of the parties.[15]

The district court was not unaware of the law in this area. It stated "consent may be vitiated by error only when it concerns the principal cause[16] or motive and that cause or motive was known or should have been known to the other party".[17] The court erred, however, when it went on to hold that the principal cause of the contract was the "sale and acquisition of Normco".[18]

The district court based its decision on a Louisiana case involving a take or pay oil and gas contract. In *Hanover Petroleum Corp. v. Tenneco Inc.,*[19] the owner of three gas wells sued the purchaser of the gas rights to these wells to recover for breach of contract. The contract clearly and unambiguously stated that the purchaser was required to pay for a minimum quantity of gas regardless of whether or not it actually took the gas. When the oil and gas industry fell on hard times, the purchaser refused to pay for the minimum quantity required by the contract. The owner sued to recover for breach of contract and the purchaser raised the defense of error in fact. The trial court granted summary judgment in favor of the well owner, finding the defense of error alleged without

---

[15]Saul Litvinoff, 5 Louisiana Civil Law Treatise, The Law of Obligations § 12.96, p. 395-96 (1992).

[16]The term "principal" is somewhat misleading. The principal cause of a contract is "that cause without which the contract would not have been made. This is sufficiently expressed by "cause" without resorting to "principal cause," which is redundant". La.Civ.Code Ann. art. 1949 (West 1993), Comment (e). "Even when an obligation has multiple causes, error that bears on any one of them is sufficient to make the obligation invalid." *Id.* Conceivably there could be more than one "principal" cause of a contract. *See Hall v. Arkansas-Louisiana Gas Co.,* 368 So.2d 984, 992 (La.1979). It should be noted, however, that error as to a subsidiary cause or motive will not vitiate consent. *Cryer v. M & M Manufacturing Company, Inc.,* 273 So.2d 818, 822 (La.1972), *aff'd on rehearing* (1973).

[17]District Court's Ruling, p. 5., citing *Hanover v. Petroleum Corp.,* 521 So.2d 1234, 1240 (La.App. 3d Cir.1988), *writ denied,* 526 So.2d 800 (La.1988).

[18]*Id.*

[19]521 So.2d 1234 (La.App. 3d Cir.1988), *writ denied,* 526 So.2d 800 (La.1988).

merit.[20] On appeal the Louisiana Court of Appeals for the Third Circuit affirmed.[21] Both the district court as well as Hymel cite this case as support for the district court's grant of summary judgment. A careful reading of *Hanover,* reveals that not only does it not support the district court's decision, it supports UNC's position in this appeal.

In *Hanover,* the defendant alleged that had it foreseen the collapse of the oil and gas market, it would not have entered the contract.[22] The court recognized the futility of this argument and affirmed the trial court's grant of summary judgment. But in so holding, the court highlighted the facts that distinguish it from the instant case. The *Hanover* defendant did not allege error as to price; rather, it alleged merely an error in its own judgment, of which the plaintiff was never aware. The instant case is different. Here UNC alleges error as to price, not error in its prediction of future profits. Moreover, UNC alleges that Hymel knew or should have known of this error. UNC does not argue that it is entitled to reformation or rescission of the contract on the basis that the oil market crash was unforeseeable. It argues that it intended and believed that the price agreed to in the contract provided for certain contingencies in future profits—contingencies of which Hymel was allegedly aware of and had consented to be included in the calculation of the sale price. The *Hanover* court stated "[i]t is not within the province of the courts to relieve the parties of their bad bargains. The principal cause of the Kaplan Contract was the sale and concomitant purchase of a certain volume of gas *at a fixed price.* There is no error alleged in regard thereto".[23] Hence, the court correctly held that the defendant's alleged error in judgment was not error as to the principal cause as a matter of law. The court's decision, however, implicitly, if not expressly, recognizes the validity of an allegation of error as to the agreed upon price.

Price, even the mere terms of payment, can and has been found to be the principal cause of

---

[20]*Id.* at 1235.

[21]*Id.* at 1241.

[22]*Id.* at 1240.

[23]*Id.* at 1240-41 (emphasis added).

a contract.[24]  From the sale of cars to the sale of real estate, Louisiana courts have held that price, in some cases was the principal cause of a contract.[25]  Based on these findings, the courts rescinded or reformed the challenged contracts based on errors in fact regarding the principal cause.[26]  Thus, UNC's offer of proof to show that price was the principal cause of the contract at issue in this case was not "irrelevant to a determination of error" as the district court held.  This evidence is highly relevant and evidences a genuine issue of material fact.  UNC may ultimately be unsuccessful; however, it is entitled to put on evidence to develop fully its allegation that price was in fact the principal cause of its contract with Hymel.  The resolution of this dispute falls in the province of the fact finder, and cannot be resolved on summary judgment.[27]

## III.

UNC also appeals the district court's grant of post-judgment interest at the rate of 9% per annum.  The note provided that "[a]ll past due interest and/or principal shall bear interest from maturity until paid, *both before and after judgment,* at the rate of 9% per annum".[28]  Based on this language in the note, the district court set the post-judgment interest at 9% per annum.  Because we

---

[24]*See e.g. Twin City Pontiac, Inc. v. Pickett,* 588 So.2d 1125, 1129 (La.App. 2d Cir.1991) (price held to be the principal cause of a contract to sell a new car);  *Arena v. K Mart Corp.,* 439 So.2d 528, 530 (La.App. 1st Cir.1983), *writ denied,* 443 So.2d 585 (La.1983) (price held to be the principal cause of a contract to sell a television set);  *Ferace v. Fullerton,* 425 So.2d 393, 395 (La.App. 3d Cir.1982) (price held to be the principal cause of a contract to sell real estate);  and *Jones v. DeLoach,* 317 So.2d 240, 243 (La.App. 2d Cir.1975) (payment terms held to be the principal cause of a contract to sell real estate).  *See also First National Bank of Ruston v. Mercer,* 448 So.2d 1369, 1375 (La.App. 2d Cir.1984) (No meeting of the minds on price held to invalidate a note and collateral mortgage agreement).

[25]*Id.*

[26]*Id.*

[27]Under Fed.R.Civ.P. 56(c), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law".  *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir.1987).  In reviewing a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party.  *Id.;  John v. State of Louisiana (Board of Trustees for State Colleges and Universities),* 757 F.2d 698, 713 (5th Cir.1985).  This holds true for both non-jury as well as jury trials.  *See also Ouachita Equipment Rental Co. v. Trainer,* 408 So.2d 930, 933 (La.App. 2d Cir.1981).

[28]Promissory Note.

vacate the district court's grant of summary judgment, we need not reach this issue. In spite of this, we note that the district court was in fact correct.

UNC contends that 28 U.S.C. § 1961 as amended in 1982, which sets post-judgment interest in federal cases at a rate equal to the coupon issue yield equivalent of the average accepted auction price for the last auction of fifty-two week United States Treasury bills, requires the district court to set interest at the rate specified in the statute in *every* case without excepti on. We reject this contention.

In *In re Lift & Equipment Service, Inc.,*[29] this Court held that "[w]hile 28 U.S.C. § 1961 provides a standard rate of post-judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws".[30] On rehearing the Court clarified its earlier holding stating that "the contract governs the rate of interest".[31] UNC's attempt to distinguish this case is without merit.[32]

## IV.

We VACATE the district court's grant of summary judgment and REMAND the case for further proceedings on the issue of whether UNC's alleged error in fact vitiates the contract.

---

[29]816 F.2d 1013 (5th Cir.1987), *modified on rehearing,* 819 F.2d 546 (1987).

[30]*Id.* at 1017.

[31]*In re Lift & Equipment Service, Inc.,* 819 F.2d 546 (5th Cir.1987).

[32]UNC argues that the case is inapposite because it involved a bankruptcy case wherein the one of the parties requested post-petition interest to be set at the contract rate. The Court's decision did not turn on these distinguishable facts. Rather, it turned on the Court's interpretation of 28 U.S.C. § 1961. Thus, it applies to the instant case.