**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE BOARD OF TRUSTEES OF THE
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Local #141
Pension Fund ("The Fund"); GEORGE
P. STEFANOW; PATRICK J.
MCDERMOTT; RICHARD W. YAHN;
EDMUND J. YAHN; HOWARD ALLEN,
as Trustees of the fund ("Trustees"),
Plaintiffs-Appellees,

and

DANIEL B. AMEND; JAMES                                    No. 95-2802
STUBENROD; HOWARD ALLEN;
EDMUND J. YAHN; JOHN KEMP, SR.;
LEWIS CRIMINSKI; PAUL W. SIMONS;
JOSEPH L. SBERNA, individually and
as former trustees,
Plaintiffs,

v.

THE AETNA CASUALTY & SURETY
COMPANY, a foreign corporation,
Defendant-Appellant.

THE BOARD OF TRUSTEES OF THE
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Local #141
Pension Fund ("The Fund"); GEORGE
P. STEFANOW; PATRICK J.
MCDERMOTT; RICHARD W. YAHN;
EDMUND J. YAHN; HOWARD ALLEN,
as Trustees of the fund ("Trustees"),
Plaintiffs-Appellants,

and

DANIEL B. AMEND; JAMES                          No. 95-2826
STUBENROD; HOWARD ALLEN;
EDMUND J. YAHN; JOHN KEMP, SR.;
LEWIS CRIMINSKI; PAUL W. SIMONS;
JOSEPH L. SBERNA, individually and
as former trustees,
Plaintiffs,

v.

THE AETNA CASUALTY & SURETY
COMPANY, a foreign corporation,
Defendant-Appellee.

Appeals from the United States District Court
for the Northern District of Virginia, at Wheeling.
Frederick P. Stamp, Chief District Judge.
(CA-93-199-CV-5)

Argued: December 5, 1996

Decided: January 27, 1997

Before WILKINS and LUTTIG, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

2

Affirmed in part, vacated in part, and remanded by per curiam unpublished opinion.

_____

**COUNSEL**

**ARGUED:** Thomas A. Doyle, BAKER & MCKENZIE, Chicago, Illinois, for Appellant. Patrick Stanley Cassidy, CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Appellees. **ON BRIEF:** Donald J. Hayden, Lisa S. Brogan, BAKER & MCKENZIE, Chicago, Illinois; Avrum Levicoff, ANSTANDIG, LEVICOFF & MCDYER, Pittsburgh, Pennsylvania, for Appellant. Wray V. Voegelin, CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellees/cross-appellants, the Board of Trustees of the International Brotherhood of Electrical Workers Local #141 Pension Fund (the "Fund"), purchased a "Pension and Welfare Fund Fiduciary Responsibility Insurance Policy" from appellant/cross-appellee Aetna Casualty & Surety Co. ("Aetna") in 1978. The policy provided in relevant part:

> I. INSURING AGREEMENT
>
> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages on account of any claim made against the Insured for any Wrongful Act.

3

. . .

> (3) "Damages" shall mean sums of money pay-
> able as compensation for loss or in discharge of an
> obligation of an Insured to make good a shortage
> in the Insured Trust or Employee Benefit Fund.
> The word "Damages" shall not include:
>
> (a) Fines, penalties, taxes, or punitive or
> exemplary damages.

J.A. at 53.

From 1986-1988, the Fund's then-incumbent board of trustees (the "former trustees") failed to timely sign formal amendments to the pension plan's governing documents required by three different tax-related statutes, and, as a result, the Fund's tax exempt status was drawn into question. See J.A. at 187. In 1989, the former trustees attempted to amend retroactively the Fund's governing documents to comply with these laws. Additionally, they sought a determination from the IRS that the pension plan, as amended, remained qualified as tax exempt during these years. See id. The IRS took the position that the former trustees had failed to amend the plan by the required compliance dates under the three statutes and thus that the Fund did not qualify for tax exempt status in 1986-88. See J.A. at 187-88. After negotiations with the IRS, the Fund participated in the IRS's "Closing Agreement Program" ("CAP"), ultimately paying to the United States Treasury $142,000 in order to maintain its tax exempt status for the years in question. See J.A. at 189.

Prior to consummation of this transaction between the IRS and the Fund, however, the Fund filed a claim for insurance coverage with Aetna, which Aetna eventually denied. Aetna denied coverage on the ground that the Fund's payment to the IRS constituted a tax, and the insurance policy explicitly excluded coverage for taxes owed. See J.A. at 188-89.

Prior to concluding its transaction with the IRS, the Fund's current trustees also filed suit against the Fund's former trustees (the "trustee-

4

trustee suit"), alleging that the former trustees breached their fiduciary duty by failing to sign the amendments. The Fund claimed as damages in this suit solely the amount that the Fund was negotiating to pay to the IRS under CAP, together with attendant attorney's fees. See id. The parties to this trustee-trustee suit ultimately entered into a court-approved consent judgment against the former trustees for $293,478.22 (representing the $142,000 payment to the IRS plus attorney's fees), plus interest at 10% per annum. See id. The settlement provided that the Fund would not seek to execute the judgment against the personal assets of the individual former trustees, but, rather, would look solely to Aetna in order to satisfy the judgment. See J.A. at 122. The former trustees also assigned any and all rights against Aetna to the Fund. See id.

Subsequent to executing the CAP settlement with the IRS, the current trustees sued Aetna for a declaratory judgment that Aetna was liable under the policy either for the CAP payment or for the judgment awarded in the trustee-trustee suit. See J.A. at 189. On cross-motions for summary judgment, the court rendered judgment in favor of the Fund, holding that the Fund's payment to the IRS was neither a "tax" nor a "penalty," and thus that the payment did constitute "damages" covered under the policy. See J.A. at 193-95. Alternatively, the district court found that Aetna was liable to pay the former trustees' debt to the current trustees arising from the consent judgment in the trustee-trustee suit, because this sum, although based solely on the sum paid to the IRS, was clearly tort law damages for breach of fiduciary duty rather than a tax or a penalty. See J.A. at 195-96. Although the district court awarded the Fund a total of $293,478.22 (the exact amount of the judgment in the trustee-trustee litigation), the court denied the plaintiff's request for "costs, additional attorney's fees, prejudgment interest and damages for annoyance and inconvenience." J.A. at 197.

From the district court's grant of summary judgment, Aetna appeals. The Fund cross-appeals the district court's failure to award pre-judgment interest and attorney's fees. For the reasons that follow, we affirm the district court's grant of summary judgment. However, we remand the damages issue to the district court because, although the district court properly exercised its discretion by declining to

5

award pre-judgment interest, the Fund is entitled to the award of attorney's fees under West Virginia law.

I.

If Aetna is liable to the Fund for either the judgment awarded in the trustee-trustee suit or for the Fund's payment to the IRS pursuant to the CAP settlement, then summary judgment was properly granted to the Fund. We conclude that Aetna is, indeed, liable to the Fund for the judgment awarded against the former trustees in the trustee-trustee suit. Accordingly, we need not, and do not, reach the question of Aetna's liability for the Fund's payment to the IRS pursuant to the CAP settlement.

Under the express terms of the settlement agreement and consent judgment reached in the trustee-trustee litigation, the Fund obtained all rights that the former trustees possessed against Aetna. The former trustees agreed to pay $293,478.22 in exchange for their release from liability for an admitted breach of fiduciary duty in failing to ensure that the Fund's charter was formally amended. Because the former trustees are also insured under the Aetna policy, this amount is a "sum[ ] which the Insured [is] legally obligated to pay as Damages on account of [a] claim," and therefore Aetna is obligated to pay this amount to the Fund (standing in the shoes of the former trustees), under the express terms of Part I of the insuring agreement. J.A. at 53.

Aetna agrees that, generally, a breach of fiduciary duty is covered under its policy. It argues, however, that the damages award in the trustee-trustee suit is, in reality, a tax or a penalty, because the damages award was in the amount of the Fund's tax liability, as agreed upon with the IRS. "The underlying tax or penalty liability is not changed," Aetna contends, "by claiming that a tort occurred that caused one to be liable for those taxes." Appellant's Br. at 28. Therefore, it argues, the former trustees' payment to the Fund is excluded from coverage under Exclusion 3(a) of the Aetna insurance policy.

While we are not unsympathetic to this argument, absent a claim that the trustee-trustee litigation was a sham,* we are ultimately

_____

*The district court expressly holding that the trustee-trustee suit was "not a sham and [ ] permissible." J.A. at 196. Aetna does not argue on

6

unpersuaded. Even though the $293,478.22 recovery in the trustee-trustee suit was based entirely upon the amount the Fund paid the IRS in settlement of the Fund's tax liability, the award in the trustee-trustee suit is unquestionably a tort law compensatory damage award. As such, the award simply does not constitute a "[f]ine[ ], penalt[y], tax[ ], or punitive or exemplary damages" award. See J.A. at 53. Consequently, the award is not excluded by the express terms of Exclusion 3(a) of the insuring agreement.

Even were it less clear that the award falls outside any of the contract's exclusions from coverage, Aetna could not be relieved of its contractual obligation to the Fund. "`It is well settled law in West Virginia that [ambiguous terms in] insurance contracts are to be strictly construed against the insurance company and in favor of the insured.'" National Mut. Ins. Comp. v. McMahon & Sons, Inc., 356 S.E.2d 488, 494 (W. Va. 1987) (quoting West Virginia Pub. Employees Ins. Bd. v. Blue Cross Hosp. Serv., Inc. , 328 S.E.2d 356, 359 n.3 (W. Va. 1985)) (alterations in original). This rule applies especially "where the policy language involved is exclusionary" so that "the purpose of providing the indemnity will not be defeated." Id. If the contract is not clear that the judgment award in the trustee-trustee suit is neither a "tax" nor a "penalty," it is, at the very least, ambiguous as to whether it is either.

We therefore hold that the district court did not err in concluding that Aetna is liable to the Fund for the tort law damages awarded in the trustee-trustee suit.

II.

The district court, stating that there was no evidence in the record that Aetna acted in bad faith, did not grant the Fund's request for pre-judgment interest in the amount of the post-judgment interest awarded in the trustee-trustee suit or the Fund's request for attorneys fees incurred in pursuing the instant declaratory judgment action. The Fund argues that, in these regards, the district court erred. For the rea-

_____

appeal -- and we find no basis in the record for holding -- that this conclusion is clearly erroneous.

7

sons that follow, we affirm the district court's decision not to award pre-judgment interest in the amount of the post-judgment interest awarded in the trustee-trustee suit. However, we vacate and remand the damages award because the Fund is entitled to receive reasonable attorney's fees for pursuing this declaratory judgment action.

In the trustee-trustee litigation, the district court awarded to the Fund $293,478.22, plus interest at the agreed-upon annual rate of 10%. In the instant declaratory judgment action against Aetna, however, the district court did not award interest, at either the market rate or the rate awarded in the trustee-trustee case, when it awarded the $293,478.22 judgment in favor of the Fund. This disparity between the two awards created an inconsistency between the amount the former trustees were ordered to pay to the current trustees and the amount Aetna was ordered to pay to the current trustees on behalf of the former trustees. The "loss" thereby created falls on the Fund, since it has agreed not to collect against the former trustees.

The Fund argues that it is entitled to some interest on the amount awarded in the trustee-trustee litigation, either at the agreed rate of 10% or the market rate, citing, inter alia, 28 U.S.C. § 1961(a); United States v. Michael Schiavone & Sons, Inc. 450 F.2d 875 (1st Cir. 1971); and Hymel v. UNC, Inc., 994 F.2d 260 (5th Cir. 1993). We reject this argument. Because the post-judgment interest on amounts awarded in the trustee-trustee lawsuit is pre-judgment interest with respect to the instant declaratory judgment action, the award of interest lies within the sound discretion of the trial court, see Coliseum Cartage Company, Inc. v. Rubbermaid Statesville Inc., 975 F.2d 1022, 1026 (4th Cir. 1992). Here, given the absence of any evidence of bad faith on the part of Aetna, we cannot conclude that the district court abused its discretion in not awarding the pre-judgment interest requested by the Fund.

The Fund is, however, entitled to reasonable attorney's fees incurred pursuing its declaratory judgment. The settlement agreement in the trustee-trustee lawsuit assigned from the former trustees to the Fund "any and all rights of action, claims and demands [the former trustees] may have against Aetna. . . ." J.A. at 222. Under West Virginia law, an insured who substantially prevails in any declaratory judgment action against his insurer is entitled to recover attorneys

8

fees, regardless of whether the insurer acted in good faith. See Aetna Casualty & Surety Co. v. Pitrolo, 342 S.E.2d 156 (W. Va. 1986); Hayseeds, Inc v. State Farm Fire & Casualty , 352 S.E.2d 73 (W. Va. 1986). Since the Fund prevailed in this case, it is entitled to collect attorney's fees, just as the former trustees would have been entitled to receive such fees if they had pursued the matter themselves. We remand to the district court to determine the reasonable level of attorneys fees to be awarded in this case in light of the factors outlined in Marshall v. Fair, 416 S.E.2d 67 (W. Va. 1992).

III.

The district court's grant of summary judgment in favor of the Fund is affirmed. The damages award is vacated and the case remanded for further proceedings to determine the amount of attorneys fees to which the Fund is entitled under the law of West Virginia.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

9